UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYVIEW HUNTERS POINT RESIDENTS et al., <br><br> Plaintiffs, <br><br> v. <br><br> TETRA TECH EC, INC. et al., <br><br> Defendants. | Case No. 19-cv-01417-JD <br><br> **ORDER RE MOTIONS TO DISMISS** <br><br> Re: Dkt. Nos. 64, 77 |
| KEVIN ABBEY et al., <br><br> Plaintiffs, <br><br> v. <br><br> TETRA TECH EC, INC. et al., <br><br> Defendants. | Case No. 19-cv-07510-JD <br><br> Re: Dkt. No. 68 |
| FIVE POINT HOLDINGS, LLC et al., <br><br> Plaintiffs, <br><br> v. <br><br> TETRA TECH, INC. et al., <br><br> Defendants. | Case No. 20-cv-01481-JD <br><br> Re: Dkt. Nos. 31, 34 |
| CPHP DEVELOPMENT, LP et al., <br><br> Plaintiffs, <br><br> v. <br><br> TETRA TECH, INC. et al., <br><br> Defendants. | Case No. 20-cv-01485-JD <br><br> Re: Dkt. Nos. 41, 45 |

1    This order resolves several motions to dismiss in these related cases. The parties'
2  familiarity with the record is assumed.

## I.    THE FEDERAL ENCLAVE DOCTRINE

Defendants Tetra Tech, Inc., Tetra Tech, EC, Inc., Dan L. Batrack, and Steven M. Burdick have moved to dismiss "all California state law causes of action barred by the federal enclave doctrine" in four cases: *Bayview Hunters Point Residents*, Case No. 19-1417; *Abbey*, Case No. 19-7510; *Five Point Holdings, LLC*, Case No. 20-1481; and *CPHP Development, LP*, Case No. 20-1485. In the last of these cases, *CPHP Development*, there is no operative complaint because the Court has granted the United States' motion to dismiss. *See* Case No. 20-1485, Dkt. No. 69. Consequently, the federal enclave issue is denied as moot for that case, and the ensuing discussion applies to *Bayview*, *Abbey*, and *Five Point*.

Defendants' main contention is that plaintiffs "plead several causes of action barred by the federal enclave doctrine because they did not exist in California law at the time the Navy accepted jurisdiction over Hunters Point in 1942." *Bayview* Dkt. No. 77 at 6. Defendants say that, under the federal enclave doctrine, "a state cedes power over the federal enclave to the federal government, subject to its reservation of right to legislate in the enclave after cessation." *Id*. at 3. If the state does not so reserve its right, "then any state laws enacted after designation of the enclave do not apply to that federal enclave," and "only state law causes of action in effect at the time of cession continue to apply in the enclave." *Id*.

Plaintiffs accept these statements about the doctrine, and do not disagree that the Hunters Point Naval Shipyard (HPNS) is a federal enclave over which there is exclusive federal jurisdiction. The sticking point between the parties is a factual dispute about the metes and bounds that delineate the area within the HPNS. Plaintiffs say that "the federal government issued three letters accepting jurisdiction over just three parcels located in the northwest corner of the property." *Bayview* Dkt. No. 90 at 2 (citing Plaintiffs' Request for Judicial Notice, Ex. 1). For this proposition, plaintiffs rely on an illegible map that is rather oddly described as the "Department of the Navy Bureau of Yards & Docks District Public Works Office Twelfth Naval District in San Bruno, California Office Drawing No. C-52026 Map of Jurisdiction Areas,

2

maintained by the State Lands Commission." *Bayview* Dkt. No. 92 at 3 & Ex. 1. Plaintiffs did not say where this document came from, what it shows, or why it might definitively mark the territorial scope of the HPNS. There is no good reason to take judicial notice of the document, and plaintiffs' request for that is denied. The map certainly does not establish that exclusive federal jurisdiction exists over just the three northwestern parcels of the Shipyard, as plaintiffs would have it.

Defendants' side of the dispute is just as questionable. They had the burden of persuasion as the moving party, and failed to tender any evidence that might have cleanly circumscribed the boundaries of exclusive federal jurisdiction for the HPNS, a showing essential for their theory of dismissal. To make matters worse, defendants confusingly refer to several different dates relating to the creation of the enclave. They say that "all state law causes of action not in existence when Hunters Point became a federal enclave -- in 1942 -- are barred." *Bayview* Dkt. No. 77 at 1. Then they point to acceptance of jurisdiction letters in February 1943, December 1942, and June 1943. *Id*. at 2-3. In a reply brief, they rely on a "May 23, 1945 letter from the United States Secretary of War to the Governor of California accepting 'exclusive jurisdiction over all lands acquired by [the United States] for military purposes within the State of California.'" *Bayview* Dkt. No. 98 at 2.

None of this, or anything else in defendants' papers, answers the main question posed by their motion, namely whether the federal enclave doctrine excludes plaintiffs' state law claims that did not exist as of 1942. The legal principles governing this inquiry are well established. As the Supreme Court has stated, "if the United States acquires with the 'consent' of the state legislature land within the borders of that State by purchase or condemnation for any of the purposes mentioned in Art. I, s 8, cl. 17, or if the land is acquired without such consent and later the State gives its 'consent,' the jurisdiction of the Federal Government becomes 'exclusive.'" *Paul v. United States*, 371 U.S. 245, 264 (1963). In either case, "[s]ince 1940 Congress has required the United States to assent to the transfer of jurisdiction over the property, however it may be acquired." *Id*. To manifest assent, Congress has required that "the head [or other authorized officer] of a department, agency, or independent establishment of the Government" shall "indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the

3

Governor of the State or in another manner prescribed by the laws of the State where the land is situated. It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section." 40 U.S.C. § 3112.

Consequently, determining the scope of how the federal enclave doctrine might apply in a case is a matter of time as well as real estate. This is so because "[t]he Constitution does not command that every vestige of the laws of the former sovereignty must vanish. On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred." *Paul*, 371 U.S. at 265 (quotations omitted).

Defendants failed to make good showings on these points. Rather than tackling that work, they merely refer the Court to its order denying a remand of the *Pennington* action because the HPNS is a federal enclave under Article I, section 8, clause 17 of the United States Constitution. *See* Case No. 18-5330, Dkt. No. 57. This order is entirely irrelevant to the question here of actually mapping the geographic and temporal boundaries of the enclave. The Court believed it had clearly advised the parties of that by saying that lines and consequences of those boundaries would be addressed at a later proceeding in the case. *See id*. at 6. That should also have been apparent in the remand context, as there was no need to fix precise boundaries to conclude that at least some portion of the Shipyard is a federal enclave. So long as the complaint plausibly alleged facts showing that one claim arose within the enclave, which it did, federal question jurisdiction was established, and the Court was vested with discretion to exercise supplemental jurisdiction over any related claims that may not arise directly on the enclave. *See Willis v. Craig*, 555 F.2d 724, 725 & n.3 (9th Cir. 1977) (federal enclave jurisdiction is a species of federal question jurisdiction).[1] Consequently, the remand question did not call for the exacting survey work necessary here.

---

[1] For the same reason, *Willis* casts further doubt on defendants' argument that claims having "their locus outside the enclave . . . must be dismissed for lack of jurisdiction." *Bayview* Dkt. No. 98 at 4. In any event, it is certainly more germane than defendants' citation to *Morongo Band of Mission Indians v. Calif. State Board of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988), a wholly irrelevant case involving interpleader and a tribe, neither of which are featured in these cases.

4

Defendants also failed to show that the federal enclave doctrine might apply to all of plaintiffs' state law claims for which they seek dismissal. Plaintiffs allege claims for defendants' conduct "throughout HPNS." *See Abbey* Dkt. No. 40 ¶ 23. This means that defendants must show that the entirety of the HPNS is a federal enclave, a result they did not achieve. That two of the three relevant plaintiffs' complaints embrace federal enclave as the basis for federal subject matter jurisdiction also does not resolve the issue in defendants' favor. *See Abbey* Dkt. No. 40 ¶ 39 ("Federal enclave jurisdiction against Defendants exists . . . because HPNS is a U.S. military shipyard purchased with the consent of the State of California, and is thus a 'federal enclave.'"); *Five Point* Dkt. No. 1 ¶ 13 ("This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1441(a), on the ground that the conduct giving rise to this action occurred in part on a federal enclave within the former Hunters Point Naval Shipyard.").

Another problem for defendants is that "the land comprising Hunters Point was acquired by the federal government for Navy use through multiple transactions beginning in 1940." *Bayview* Dkt. No. 77 at 1. It is unclear if, when, and for which of these areas the federal government affirmatively accepted exclusive jurisdiction, not to mention any possible reservations of rights made by the State of California. This situation is akin to the circumstances in *Paul*, where the Supreme Court stated that "[e]ach of the three enclaves has numerous units acquired at various times, some of which may be subject to 'exclusive' federal jurisdiction and some of which may not be." 371 U.S. at 269.

These critical issues are quintessential questions of fact well outside the purview of a motion to dismiss. The Supreme Court indicated as much in *Paul*, when it sent the case back to the district court to "make particularized findings as to where the purchases and sales of milk from nonappropriated funds are made and whether or not those tracts are areas over which the United States has 'exclusive' jurisdiction within the meaning of Art. I, s 8, cl. 17 of the Constitution." *Id.*; *see also Willis*, 555 F.2d at 725-26 (in federal enclave jurisdiction case where "factual dispute centers on the question of just how the government acquired the property on which [plaintiff] was injured, and how it is being used," and facts proffered by parties were neither conclusive nor

persuasive, remanding so that "the parties can provide conclusive facts to aid the district court in making this determination").

Consequently, particularized findings to determine the application of the federal enclave doctrine will be required. The current record is not sufficiently developed for that. It is very possible that the Court will need the assistance of a professional historian or similar expert, and that an evidentiary hearing may be warranted. For now, defendants' motion is denied.

## II. THE *FIVE POINT HOLDINGS* COMPLAINT, CASE NO. 20-1481

Defendants Tetra Tech, Inc. and Tetra Tech EC, Inc. ask to dismiss portions of (1) plaintiffs Five Point Holdings, LLC and CP Development Co., LLC's complaint, and (2) plaintiffs CPHP Development Co., LP; HPS1 Block 50, LLC; HPS1 Block 51, LLC; HPS1 Block 53, LLC; HPS1 Block 54, LLC; HPS1 Block 55, LLC; HPS1 Block 56/57, LLC; and Lennar Corporation's complaint. The motion was filed in the *Five Point Holdings* action, Case No. 20-1481, at Dkt. No. 31, and the *CPHP Development, LP* action, Case No. 20-1485, at Dkt. No. 41. It is again terminated as moot for the *CPHP Development* action, Case No. 20-1485, as there is currently no operative complaint in that case.

In the *Five Point Holdings* action, Case No. 20-1481, defendants move to dismiss the negligence, negligent hiring, negligent interference with prospective economic advantage, and intentional interference with prospective economic advantage causes of action, on statute of limitations grounds. Dkt. No. 31 at 1. Defendants say these claims are all subject to a two-year statute of limitations that began to run no later than December 2016 and expired before the suit was filed in February 2020. *Id*. at 5-6. Defendants pinpoint December 2016 as the date of accrual on the basis of "judicially-noticeable admissions by Five Point Holdings, LLC in its December 2016 filing with the United States Securities and Exchange Commission ("SEC"), which explicitly refers to the allegations of misconduct against the Tetra Tech Defendants for TtEC's work at Hunters Point and the possibility that the alleged misconduct will lead to a delay in the transfer and development of the parcels in question." *Id*. at 2.

That is not fully accurate. The SEC filing document actually states: "allegations that a contractor hired by the U.S. Navy misrepresented the scope of its remediation work at The San

1  Francisco Shipyard may result in governmental investigations, which could delay or impede the
2  scheduled transfer of these parcels, which would in turn delay or impede our future development
3  of such parcels." Dkt. No. 32-1 at 26. Plaintiffs' complaint alleged in a much more concrete way
4  that it was only when the sentencing proceedings against Justin Hubbard were unsealed in May
5  2018 that plaintiffs became "aware of the admissions and guilty pleas by employees of Tetra Tech
6  or the significant fraud that had occurred." Dkt. No. 1 ¶ 27. Plaintiffs further alleged that
7  "[d]espite the ongoing investigation by the DOJ, the United States never communicated to
8  Plaintiffs the extent of the fraud by Tetra Tech that had taken place or how long the transfer of
9  Shipyard property would be delayed. Plaintiffs did not learn such information until May 2018."
10 *Id*.

The Court declines to take judicial notice of Five Point Holdings' "admissions" in the December 2016 SEC filing. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1001 (9th Cir. 2018). It is unclear that the speculative and contingent statements in the SEC filing contradict plaintiffs' factual complaint allegations in any event. In sum, the issue of when plaintiffs discovered their causes of action is one that presents factual disputes unsuitable for resolution on a motion to dismiss. *See In re Capacitors Antitrust Litigation*, 106 F. Supp. 3d 1051, 1065 (N.D. Cal. 2015). Defendants' motion is denied.

## III. THE *BAYVIEW HUNTERS POINT RESIDENTS* CORRECTED FOURTH AMENDED COMPLAINT, CASE NO. 19-1417

The final motion resolved in this order is defendants Tetra Tech EC, Inc., Tetra Tech, Inc., Dan L. Batrack, and Steven M. Burdick's motion to dismiss the corrected fourth amended complaint in the *Bayview Hunters Point Residents* action, Case No. 19-1417, Dkt. No. 64.

Both sides took an unproductive and unhelpful kitchen sink approach here, with the result that many of the claims and arguments were superficial and poorly developed. The slight silver lining is that this allows quick resolution of the parties' disputes. Plaintiffs alleged thirteen causes of action against defendants, and defendants lobbed back twenty-one separate arguments in their motion to dismiss. Dkt. Nos. 43, 64. This style of litigation is unduly burdensome on everyone, and wastes judicial resources. The Court is also concerned by significant lapses in civility and

7

professionalism in the parties' briefs, on both sides. All parties and counsel are advised that further breakdowns in civility, and wasteful litigation tactics that unreasonably multiply proceedings, will face sanctions, potentially including monetary sanctions, evidence, issue or defense preclusion, and professional conduct sanctions.

On the substance of defendants' motion, plaintiffs have adequately alleged a case or controversy under Article III of the United States Constitution. Defendants' Article III standing argument is denied. Dkt. No. 64 at 4-5.

For defendants' UCL and FAL standing arguments, Dkt. No. 64 at 5-6, plaintiffs need to do more than simply list categories of economic and non-economic damages they claim to have suffered. The UCL and FAL claims (first and second causes of action) are dismissed, as plaintiffs have not plausibly pled facts showing that they lost money or property because of defendants' challenged conduct.

Defendants' argument that plaintiffs lack "standing" to prosecute their public nuisance claim (ninth cause of action) because they lack "allegations showing how each plaintiff was especially injured by the alleged nuisance" is denied. Dkt. No. 64 at 6. "[W]hen the nuisance is a private as well as a public one, there is no requirement the plaintiff suffer damage different in kind from that suffered by the general public." *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1551 (2009).

For plaintiffs' claim for violation of Proposition 65 (fifth cause of action), plaintiffs "request leave of Court to amend this complaint to reflect plaintiffs' compliance with the 60-day statutory [notice of intent to sue] requirements." Dkt. No. 80 at 9. Plaintiffs' request to amend that claim is granted.

Defendants' argument that plaintiffs "failed to sue indispensable parties," *i.e.*, the Navy and the EPA, is denied. Dkt. No. 64 at 7. Defendants have cited no authority for their implication that this asserted failure supports their dismissal request, nor have they specified which claims they are requesting be dismissed on this basis.

Plaintiffs' current complaint lumps defendants Tetra Tech EC. Inc., Tetra Tech, Inc., Dan L. Batrack, Steven M. Burdick, Stephen C. Rolfe, and Justin E. Hubbard all together as "Tetra

Tech." Dkt. No. 43 ¶¶ 19-23. This is impermissible pleading and it does not give each defendant fair notice of the claims against them. This must be fixed on amendment.

Plaintiffs' complaint is not dismissible on the ground that it is a "shotgun pleading." Dkt. No. 64 at 9. Defendants' Rule 8 argument is denied.

Defendants cite no specific, controlling authority for their contention that plaintiffs' claims must be severed because there are too many plaintiffs. Dkt. No. 64 at 10-11. The argument is denied.

Defendants' general and conclusory argument that "the complaint fails to allege facts supporting the elements of each cause of action" is unhelpful and it is denied. Dkt. No. 64 at 11.

Defendants' argument that the class allegations should be stricken, Dkt. No. 64 at 11-12, is an improper 12(f) motion and it is premature and underdeveloped under Rule 23. The argument is denied.

That defendants don't know enough about the facts pertaining to each plaintiff is an issue that should be explored in discovery and raised at a later stage of the case. Dkt. No. 64 at 12-14.

In their last five pages of briefing, defendants cover twelve causes of action, breezing through the elements of those claims and arguing in a conclusory way that plaintiffs have not satisfied them. Dkt. No. 64 at 14-19. These arguments are too general to be sustained at this time.

Plaintiffs' fourth amended complaint is dismissed for the reasons above, and plaintiffs are given leave to amend. An amended complaint must be filed in 30 days, and it may not add any new claims or defendants without express leave of Court. The Court stresses that plaintiffs should make every effort to clarify and focus their claims. Defendants, should they move to dismiss again, should also focus their dismissal arguments and fully develop the ones they choose.

**IT IS SO ORDERED.**

Dated: March 31, 2021

JAMES DONATO
United States District Judge