CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF CHARLES A. BONNER**
475 GATE FIVE RD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BAYVIEW HUNTERS POINT RESIDENTS, DANIELLE CARPENTER, CHRISTOPHER CARPENTER, DECEASED, BY DANIELLE CARPENTER, REPRESENTATIVE AND SUCCESSOR IN INTEREST; CATHERINE MUHAMMAD, ***Including All Parties Listed In Exhibit A***; and Doe Plaintiffs 1-40,000, on behalf of themselves, and all others similarly situated,<br><br>   Plaintiffs,<br>   vs.<br><br>TETRA TECH EC, INC.; TETRA TECH, INC; DAN L. BATRACK, *In his Individual and Official Capacity*, CHAIRMAN, CHIEF EXECUTIVE OFFICER and PRESIDENT of TETRA TECH; STEVEN M. BURDICK, *In his Individual and Official Capacity,* EXECUTIVE VICE PRESIDENT, CHIEF FINANCIAL OFFICER OF TETRA TECH; STEPHEN C. ROLFE, *In his Individual and Official Capacity,* MANAGING AGENT OF TETRA TECH EC INC.; JUSTIN E. HUBBARD, *In his Individual and Official Capacity,* MANAGING AGENT OF TETRA TECH EC INC.; LENNAR CORPORATION; and FIVE POINT HOLDINGS, LLC., and DOES 1-100 Inclusive,<br><br>   Defendants. | Case No.: 3:19-cv-01417-JD<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF *BAYVIEW HUNTERS POINT RESIDENTS* MASS ACTION AND CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><br>**DATE:  December 8, 2022**<br>**TIME:   10:00 am**<br>**DEPT.:  11**<br>**JUDGE: HONORABLE J. DONATO** |

MOTION FOR PRELIMINARY APPROVAL OF *BAYVIEW HUNTERS POINT RESIDENTS* CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS
Case No.: 3:19-cv-01417-JD

LEGAL02/42262328v1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on December 8, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the BAYVIEW HUNTERS POINT RESIDENT Plaintiffs will and hereby do move for entry of an order seeking preliminary approval of a proposed settlement with Defendants Lennar Corporation and Five Point Holdings, LLC (collectively, "Developers").  This motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 23 and the Northern District of California's Procedural Guidance for Class Action Settlements.  Plaintiffs seek approval of this settlement because it is fair, reasonable, and adequate.

The BAYVIEW HUNTERS POINT RESIDENT Plaintiffs also seek conditional certification of a class for settlement purposes based on specific class-wide benefits included in the proposed settlement.  The settlement class meets the prerequisites of Rule 23(a), common questions of liability predominate over individual issues, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Law Offices of Bonner & Bonner seek appointment as Lead Class Counsel for purposes of settlement.  Since the intake of this case in February 2018, Bonner & Bonner ("Class Counsel") has spent in excess of 1,500 hours investigating the potential claims and negotiating a favorable settlement. Class Counsel has considerable experience in handling complex litigation.

The BAYVIEW HUNTERS POINT RESIDENT Plaintiffs seek approval of their Plan of Allocation.  The Plan allocates and pays a pro-rata share of the settlement funds to each class member who submits a meritorious claim.  The plan is fair, reasonable, and adequate in light of the value of the non-monetary award and the strength of their claims on the merits.

The BAYVIEW HUNTERS POINT RESIDENT Plaintiffs seek the appointment of Kroll Settlement Administrators as the Settlement Administrator.

Finally, the BAYVIEW HUNTERS POINT RESIDENT Plaintiffs seek approval of their Notice Plan.  The proposed Notice Plan is the best practicable approach under the circumstances,

---

MOTION FOR PRELIMINARY APPROVAL OF *BAYVIEW HUNTERS POINT RESIDENTS* CLASS ACTION
SETTLEMENT WITH HOMEBUILDER DEFENDANTS
Case No.: 3:19-cv-01417-JD

and the notice itself fairly apprises the prospective Class Members and individual Plaintiffs of the terms of the proposal and their available options.

This motion is based upon this Notice, the Memorandum of Points and Authorities in Support thereof; the declarations of Charles A. Bonner, Arieann Harrison, Catherine Muhammad, the Honorable Daniel Weinstein, Lizbeth Hasse, and Jeanne C. Finegan, and the exhibits attached thereto; and any further papers filed in support of this motion, as well as arguments of counsel and all records on file in this matter.

**Dated: November 3, 2022**

**LAW OFFICES OF BONNER & BONNER**

*/s/Charles A. Bonner*
Charles A. Bonner
Attorney for Plaintiffs

MOTION FOR PRELIMINARY APPROVAL OF *BAYVIEW HUNTERS POINT RESIDENTS* CLASS ACTION
SETTLEMENT WITH HOMEBUILDER DEFENDANTS
Case No.: 3:19-cv-01417-JD

LEGAL02/42262328v1

1

2 TABLE OF CONTENTS

3 Table of Authorities ............................................................................................................. iii

4 I.     INTRODUCTION/BACKGROUND ............................................................................ 1

5

6 II.    ARGUMENT .............................................................................................................. 4

7     A.    THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
          SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE .................. 4

8       1. The Proposed Class Representative Has Adequately Represented the Class ................. 4

9       2. The Parties Negotiated the Settlement at Arm's Length ................................................. 5

10      3. The Relief Provided is Adequate ........................................................................................ 6

11          a)    The Relief is Adequate in Light of the Costs, Risks, and Delay of Further
                Litigation ............................................................................................................... 6

12          b)    The Proposed Claims-Made Process is Fair and Efficient ................................. 8
            c)    The Relief is Adequate In Light of the Requested Attorneys' Fees and Costs ... 10

13      B. NORTHERN DISTRICT'S PROCEDURAL GUIDANCE FOR CLASS ACTION
         SETTLEMENTS ................................................................................................................ 10

14      1. Information About the Settlement ...................................................................................... 10

15        a. Class Definition ................................................................................................................. 10
          b. Claims Released ................................................................................................................ 12

16        c. Settlement Value v. Potential Recovery at Trial ............................................................. 12

17        d. The Proposed Plan of Allocation for the Settlement Fund ........................................ 13
          e. Estimate of Number of Claims ........................................................................................ 15

18        f. Reversions ......................................................................................................................... 15

19      2. Settlement Administration .................................................................................................. 15

20      3. Notice .................................................................................................................................... 15

21      4. Request for Exclusion ......................................................................................................... 17

22      5. Objections ............................................................................................................................. 17

23      6. Attorneys' Fees ..................................................................................................................... 17

24      7. Cy Pres .................................................................................................................................. 18

25      9. Timeline ................................................................................................................................ 18

26      10. CAFA Notice ....................................................................................................................... 18

27      11. Past Distributions ............................................................................................................... 19

28      C. THIS COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR
         SETTLEMENT PURPOSES .............................................................................................. 19

1. This Settlement Meets the Prerequisites of Subdivision (a) of Rule 23. ...................... 19

    a. Numerosity ........................................................................................... 19
    b. Commonality......................................................................................... 19
    c. Typicality .............................................................................................. 20
    d. Adequacy of Representation ................................................................. 20
2. This Settlement Meets the Requirements of Subdivision (b)(3) of Rule 23................ 20

  D. THIS COURT SHOULD APPOINT BONNER & BONNER AS CLASS COUNSEL
FOR PURPOSES OF SETTLEMENT .............................................................................. 21

III.      CONCLUSION.............................................................................................. 23

## **<u>Table of Authorities</u>**

**Cases**

*Amaro v. Gerawan Farming, Inc.*, 2016 WL 3924400..................................................................... 5

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ..................................................... 21

*Bickel v. Sheriff of Whitley Cty.*, 2016 WL 29612, at \*3 (N.D. Ind. Jan. 4, 2016) ........................ 6

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................................ 13

*General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330 (1980) ........................................................................................................................ 20

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ........................... 17

*In re Myford Touch Consumer Litig.*, 2018 WL 10539266, at \*2 (N.D. Cal. June 14, 2018)....... 8

*Laffitte v. Robert Half Int'l Inc.,* 1 Cal.5th 480 205 Cal.Rptr.3d 555, 376 P.3d 672 (2016) ........ 17

*Lowery v. City of Albuquerque*, 2013 WL 1010384, at \*19 (D.N.M. Feb. 27, 2013) .................... 7

*Mangold v. Cal. Public Util. Commc'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) .............................. 17

*Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ............................................................. 8

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ..................... 10, 17

*See Lowery v. City of Albuquerque*, 2014 WL 7473790, at \*53 (D.N.M. Dec. 17, 2014) ............ 7

*Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 319 (C.D. Cal. 2016) ............................................. 5

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ............................................... 20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ............................................ 10

**Statutes**

28 U.S.C. § 1715 ........................................................................................................................ 18

Proposition 65 ............................................................................................................... 1, 3, 12, 20

**Other Authorities**

Newberg on Class Actions (5th Ed.)......................................................................................... 5, 19

**Rules**

Fed. R. Civ. Proc. Rule ........................................................................................................ 3, 5, 20

MOTION FOR PRELIMINARY APPROVAL OF *BAYVIEW HUNTERS POINT RESIDENTS* CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS

Case No.: 3:19-cv-01417-JD                                                                          iii
LEGAL02/42262328v1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION/BACKGROUND

Members of the predominantly African American neighborhoods in Bayview Hunters Point brought this action to seek redress for their well-founded and reasonable belief that the fraudulent, criminal cleanup of the former Hunters Point Naval Shipyard ("HPNS") by Navy contractor Tetra Tech has exposed them to a risk of cancers, asthma, and other debilitating respiratory illnesses. Plaintiffs also named Developers as Defendants, seeking among other things an injunction to prevent Developers from proceeding with their development at HPNS "until thorough, complete, and verified test results prove that all the toxins and radioactive materials have been removed." ECF 114 ¶ 269. Plaintiffs named the Developers, among other reasons, in an effort to prevent them from taking further steps to develop their respective property and thereby allegedly releasing additional toxins into the community. Bonner Decl. ¶ 12. However, across four separate amended complaints, Plaintiffs intentionally did not name the Developers in any of the same causes of action as the ones asserted against Tetra Tech because they saw the Developers as the less culpable parties and as victims of Tetra Tech's fraud. Bonner Decl. ¶ 13.

On June 17, 2020, however, Plaintiffs learned that Defendant Lennar Corporation ("Lennar") had resumed its development efforts and was digging and excavating a section of Parcel A in the Hunters Point Shipyard directly adjacent to a chain-link fence dividing the Shipyard from a school and residences along Kiska Road. Bonner Decl. ¶ 14. Many different members of the community observed the digging and reported to their counsel. Bonner Decl. ¶ 15. Based on the videos and photographs of the digging, Plaintiffs believe that Lennar was not sufficiently implementing dust or particulate mitigation efforts. *Id.* Plaintiffs also contend that Lennar did not adequately provide them notice under Proposition 65, as required by California law. *Id.* Therefore, when Plaintiffs filed their Fifth Amended Complaint, they included additional allegations and causes of action against Developers and other information learned during the course of this litigation. Bonner Decl. ¶ 17.

Plaintiffs and Developers engaged in formal mediation efforts and negotiations before two neutral mediators, the Honorable Daniel Weinstein (Ret.) and Lizbeth Hasse, Esq. at JAMS, and

were eventually able to reach agreement on a proposed settlement of this action on November 23, 2021 (the "Settlement").  The Parties now seek preliminary approval of that Settlement on behalf of the following class:

> All current residents of Postal Zip Code 94124 and any individuals who previously resided in Postal Zip Code 94124 at any time between January 1, 2004 and the date on which this Settlement Agreement receives preliminary approval, as well as all parties named in Amended Exhibit A to Plaintiffs' Fifth Amended Complaint. (ECF Doc 154).

> Excluded from the Class are those individuals whose claims against Developers have been released under the terms of the settlement agreement in *Pennington et al. v. Tetra Tech Inc., et al.*, Case No. 3:18-cv-05330 (N.D. Cal.), ECF Nos. 123-1, 224; the Judge presiding over this Action and members of the Court's staff; Developers, including Developers' subsidiaries, parent companies, successors, predecessors, and any entity in which Developers or its parents have a controlling interest and their current or former officers, directors, and employees; and Defense Counsel.

The Settlement consists of both monetary and non-monetary components. To begin with, Developers will pay five million, four hundred thousand dollars ($5,400,000) to settle the claims against them in this Action (the "Settlement Fund"). The Settlement Fund will be allocated as follows:

First, three million, five hundred thousand dollars ($3.5 Million) shall be set aside for named Plaintiffs and current residents of HPNS, who will be entitled to submit claims to receive a portion of that amount (with the exact recovery dependent on number of claims submitted). Second, one hundred thousand dollars ($100,000) shall be set aside for former residents of HPNS, who will be entitled to submit claims to receive a portion of that amount (with recovery capped at no more than $100 per claim). Third, four hundred thousand dollars ($400,000) shall be apportioned to a medical fund that will provide monitoring and testing services for class members who may have been exposed to toxic chemicals as a result of Tetra Tech's misconduct. Fourth, up to one million, four hundred thousand dollars ($1,400,000) from the Settlement Fund will be set aside for a potential award of attorneys' fees and expenses for Class Counsel, with any remainder to be added to the payments made to current residents of HPNS. In addition to those monetary

benefits, Lennar has also agreed to provide a weekly site monitoring report detailing the dust mitigation practices implemented at Parcel A to the mediators for a review of the process and protocols in place and to answer any questions the mediators may have about those reports for a period of up to one year following settlement approval (or completion of the construction process, if earlier).

Plaintiffs are well apprised of the strength of their case. Counsel has reviewed a multitude of documents regarding the history of HPNS and the transfer of HPNS from the United States Navy to the City and County of San Francisco and thereafter, contracting with Developers to construct housing and other facilities.  Bonner Decl. ¶ 8.  As mentioned, Developers were initially named as Defendants primarily in an effort to prevent further development of Parcel A, and Plaintiffs only recently brought additional causes of action against Developers after Plaintiffs became aware that Lennar had resumed excavating and digging allegedly without complying with either Proposition 65 notice requirements and/or dust or particulate mitigation requirements.

Plaintiffs are similarly apprised of the weaknesses in their claims against Developers. Developers have brought their own claims against Tetra Tech on account of Tetra Tech's fraud, and Developers' claim that they have been similarly victimized may complicate Plaintiffs' case at trial.  Plaintiffs are also aware that they may face significant hurdles even reaching a trial, including merit defenses Developers may raise to Plaintiffs' claims as well as challenges to class certification that Developers may assert.  This Court's partial dismissal of Plaintiffs' claims against Tetra Tech at the pleading stage underscores the risks that Plaintiffs face in eventually obtaining recovery. And any such recovery will take years to achieve and defend on appeal.

Given that the totality of the circumstances reveal that this settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that this Court grant preliminary approval of the settlement as discussed more fully below and certify the class for purposes of settlement.

## II.    ARGUMENT

## A.    THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

The Court may approve settlements shown to be fair, reasonable, and adequate. Fed. R. Civ. Proc. Rule 23(e)(2). The Settlement warrants approval because the Class was adequately represented, the Settlement was negotiated at arm's length, the relief is adequate, and the proposal treats Class Members equitably relative to each other.

### 1. The Proposed Class Representative Has Adequately Represented the Class

Plaintiffs respectfully request that this Court provisionally designate Arieann Harrison as the Class Representative for purposes of this settlement. Ms. Harrison (1) lives in Hunters Point (as defined by the 94124 Zip Code) and is knowledgeable about the case; (2) understands her duties as class representative; and (3) has no conflicts of interest with other Class Members. Rule 23(e)(2)(A).  *See* Declaration of Arieann Harrison ("Harrison Decl."). Ms. Harrison and her family are long-time residents of the Hunters Point Community.  Harrison Decl. ¶ 2. Ms. Harrison currently lives at 19 Kiska Rd., San Francisco 94124.  *Id.* Before living on Kiska Rd., Ms. Harrison's address was 730 Innes Ave., San Francisco, CA 94124, which was a half block from Hunters Point Naval Shipyard. *Id.* There is a chain-link fence separating HPNS from the residential community and her prior residence.

Ms. Harrison has been involved in this litigation since its inception and submitted a declaration supporting the Residents' Motion for an Order to Show Cause (Dkt. 132-5 p. 4). During the litigation, Ms. Harrison was in frequent contact with Charles Bonner and Class Counsel regarding the litigation and mediation.  Harrison Decl. ¶¶ 4, 7, 11-14.

Ms. Harrison understands that the mediation and any settlement are for the conduct of the Developers and are not for the conduct of Tetra Tech. Harrison Decl. ¶ 10. Mr. Bonner fully explained the mediators' proposal to the community leaders, including Ms. Harrison, who agreed to accept the proposal and move forward with the settlement. Harrison Decl. ¶ 14. Ms. Harrison understands that this settlement does not represent the full value of the injuries and damages

suffered by her and her community members and that the litigation against Tetra Tech will continue. *Id.*

Ms. Harrison's interests align with the interests of other Class members. First, all current resident class members and any others among the Named Plaintiffs who are regularly exposed to development at Hunters Point, like Ms. Harrison, will directly benefit from the additional oversight of the Parcel A work and access to medical monitoring. Second, every class member and the named Plaintiffs will benefit by receiving monetary compensation. *See* Newberg on Class Actions (5th Ed.) § 3:58; *Amaro v. Gerawan Farming, Inc.*, 2016 WL 3924400, at *8 (E.D. Cal. May 20, 2016) (rejecting challenge to adequacy of class representative where "he is seeking the same type of relief . . . to which all other potential class members may be entitled.").

Ms. Harrison also understands her responsibilities as a class representative. Harrison Decl. ¶ 15. She is putting the interests of the class ahead of her own personal interests. Ms. Harrison is willing to sit for a deposition and to answer written discovery questions as necessary because she believes that a successful resolution of this case will benefit the entire community. *Id.*

### 2. The Parties Negotiated the Settlement at Arm's Length

The Settlement is the product of an arm's length negotiation mediated by the Hon. Judge Weinstein and Lizbeth Hasse, Esq. at JAMS in San Francisco. Rule 23(e)(2)(B); Declaration of Hon. Daniel Weinstein (Ret.) ("Weinstein Decl.") ¶¶ 9-14; Declaration of Lizbeth Hasse, Esq. ("Hasse Decl.") ¶¶ 7-12. Beginning in October 2020, the Parties initiated settlement discussions overseen by highly experienced mediators who also helped to oversee the settlement for which this Court has granted final approval in the related *Pennington* action (Case No. 3:18-cv-05330-JD (N.D. Cal.)). After more than a year of negotiations, the Parties reached a preliminary agreement on the basic structure of a settlement in November 2021, and on or about June 5, 2022 finalized the settlement agreement that gave rise to this request for preliminary approval. The parties' settlement positions were primarily and predominantly communicated through the mediators rather than directly between the Parties' counsel. Bonner Decl. ¶¶ 16, 21, 23-24.

The Parties reached the Settlement in response to a mediator's proposal. Attorneys' fees will be paid from the Settlement fund at the court's discretion. Bonner Decl. ¶¶ 46-47; *see Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 319 (C.D. Cal. 2016) (proposed settlement "appear[ed] to be the product of serious, informed, non-collusive negotiations").

**3. The Relief Provided is Adequate**

The Settlement Fund is Five Million, Four Hundred Thousand Dollars ($5,400,000). Bonner Decl. ¶ 25.  If the court awards attorneys' fees and costs as requested by Class Counsel, then the remaining Settlement Fund balance will be $4 million calculated as follows:

a.  Settlement Fund        $5,400,00.00

b.  Costs                  ($262,985.01)

c.  Attorney Fees          ($1,137,014.99)

    a.  Balance:        $4,000,000

In addition to the Settlement Fund, Developers have agreed to pay up to an additional $50,000 towards the cost of settlement administration. Should the cost of settlement administration exceed $50,000, up to $80,000 of the additional costs of settlement administration would be taken from the Settlement Fund. Class Counsel will cover any notice and settlement fees in excess of $130,000. Consequently, the amount of the Settlement Fund that will be made available to settlement class members will range between $3,920,000-$4,000,000. Of that amount, $400,000 will be set aside for the medical monitoring fund. So, between $3,520,000 and $3,600,000 will be available for direct cash payments to settlement class members.

*a)*  **The Relief is Adequate in Light of the Costs, Risks, and Delay of Further Litigation**

Based on census data, the parties anticipate that each cash claim will be worth a minimum of $100, and for named Plaintiffs and current residents, potentially $300 or more, as explained in more detail in section II.A.3.b. Unlike the plaintiffs in *Pennington*, the Plaintiffs here do not have an easily definable economic injury that forms the basis of their claims. Instead, Plaintiffs' claims arise from their fear of cancer and other illnesses that may occur in the future because of exposure

to toxic chemicals. [Doc 114 Sec VI. DAMAGES-FEAR OF CANCER]. As courts recognize, valuing those types of emotional distress damages with precision is inherently difficult. *E.g., Bickel v. Sheriff of Whitley Cty.*, 2016 WL 29612, at *3 (N.D. Ind. Jan. 4, 2016) (acknowledging "calculating emotional distress and special damages[] is extremely subjective"); *Lowery v. City of Albuquerque*, 2013 WL 1010384, at *19 (D.N.M. Feb. 27, 2013) (acknowledging Plaintiffs' concern "that a jury verdict on their mental and emotional damages would be highly unpredictable" in context of class settlement). However, estimates of $2500-$5000 for emotional distress claims have been approved in other contexts. *See Lowery v. City of Albuquerque*, 2014 WL 7473790, at *53 (D.N.M. Dec. 17, 2014). Applying those estimates here would mean that class members would be eligible to recover 2-5% of their damages in cash payments through this settlement if all class members submit claims, or potentially as much as 6-12% (and, again, these amounts are not intended to compensate class members for their entire injury – the litigation against Tetra Tech will continue).

Furthermore, apart from the cash payments, settlement class members will have access to a medical fund that will allow them to receive valuable testing services to help track their health status, which will help to alleviate health concerns they may have. And as discussed above, the primary motivation for Plaintiffs' action against Developers was to ensure that Developers undertake excavation, digging, and construction in a safe and regulatory compliant manner. Accordingly, the non-monetary component of the settlement, which will require Lennar to provide its weekly site monitoring report to a neutral, independent third party for review, provides substantial value to the settlement class by increasing the level of transparency and providing the settlement class with additional assurance that they are not being exposed to any unduly harmful substances.

Tetra Tech is the Defendant primarily responsible for the persistence of toxic soils at HPNS, which created the need for Developers to comply with and impose dust mitigation measures. If this Court approves the settlement, Class Members will receive a material portion of their total economic damages early in the litigation from the Developers, who are also victims of Tetra Tech's fraud, along with the value of access to medical testing services and Lennar's site

monitoring reports. If the Court does not approve the settlement, Plaintiffs could spend years litigating against the Developers—this action was filed more than four years ago and has only recently moved into discovery—without any guarantee that they will be able to certify a class or prevail at trial. Since Plaintiffs' action against Tetra Tech will be unaffected by this settlement, Plaintiffs will retain the right to hold Tetra Tech responsible for redressing Plaintiffs with additional compensation as Tetra Tech, whose egregious and fraudulent actions are the originating cause of Plaintiffs' claims. That fact, as well as the costs, risks, and delay of further litigation, compel a finding that the early recovery provided by this Settlement is adequate. "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *Noll v. eBay, Inc*., 309 F.R.D. 593, 606 (N.D. Cal. 2015).

### *b)* The Proposed Claims-Made Process is Fair and Efficient

As discussed above, the primary motivation for including the Developers in the additional claims asserted in the Fifth Amended Complaint was to address the digging that Lennar restarted in 2020. Based on this, the bulk of the settlement proceeds are allocated to current residents of the 94124 Zip Code and the named Plaintiffs, who have been most affected by the recent conduct of Lennar and have the most viable claims. Specifically, approximately $3,500,000[1] will be set aside for payment of cash claims to these individuals, all of whom will be entitled to receive the same amount to be determined based on the number of valid claims filed. Based on census data, Class Counsel is informed that there are around 35,000 individuals currently living in the 94124 Zip Code.  Bonner Decl. ¶ 37. If every single current resident filed a claim for compensation, each would receive approximately $100. However, a 100% claim rate is an unrealistic assumption. If claims were only filed by the approximately 9,000 named Plaintiffs in this Action listed in Exhibit A to the Fifth Amended Complaint, as well as a reasonable 10% estimate of the current remaining residents, *see In re Myford Touch Consumer Litig*., 2018 WL 10539266, at *2 (N.D. Cal. June 14,

---

[1] As noted above, if settlement administration expenses exceed $50,000, this amount could be reduced to partially pay for up to $80,000 in additional settlement expenses, but in no event would the fund be less than $3,420,000.

2018) (10% claim rate is within typical range), the per-person claims payment would be approximately $300.

For former residents who meet the class criteria (i.e., formerly lived in the Zip Code between 2004 and the date of preliminary approval in this class), a smaller share of the Settlement Fund has been set aside ($100,000). That lower amount reflects both the uncertainty about the number of individuals falling within the class definition as well as the much lower viability of claims for those individuals against Developers, given that Plaintiffs primarily assert claims against Developers based on conduct beginning in 2020.[2]  Bonner Decl. ¶ 41.  Even so, settlement class members falling under this category can still receive up to $100 by submitting a valid claim for payment.  *Id.*

With respect to the notice procedure to inform potential class members of this settlement and the claims process, Class Counsel, in consultation with counsel for Developers, selected Kroll Settlement Administration to provide notice to the class and to administer the claims process. Kroll will provide direct notice to current resident class members by sending postcards to all resident addresses within the 94124 Zip Code. Finegan (Kroll) Decl. ¶¶ 14, 21-24; Bonner Decl. ¶ 32, 37-38.  Kroll will also utilize billboards and create a targeted social media campaign to provide notice to class members who no longer live in the 94124 Zip Code. Finegan (Kroll) Decl. ¶¶ 25-27. Finally, Class Counsel will provide further notice to all of the roughly 9,000 named Plaintiffs, who constitute a substantial portion of the overall class in this case. Bonner Decl. ¶ 38.

After receiving notice, potential class members will have the opportunity to submit their claims through a website created and maintained by Kroll. Finegan (Kroll) Decl. ¶¶ 28-30. The potential class members will be required to provide minimal information and evidence to support the claim (primarily, proof of current or former residence). Finegan (Kroll) Decl. ¶ 29. Kroll will employ various measures to address fraudulent claims, including screening for known suspicious

---

[2] The claims of the non-resident named Plaintiffs listed in Exhibit A to the Fifth Amended Complaint, which was not filed until April 30, 2021, are appropriately subject to the first settlement fund because those individuals' interactions with the 94124 Zip Code are ongoing and their fear of cancer claims are, therefore, more properly treated consistent with the claims of current residents.

filers, screening for many claims coming from the same IP address, determining duplicate claims, and requiring a Captcha to ensure claims are submitted by a human. *Id.*

       *c)*    **The Relief is Adequate In Light of the Requested Attorneys' Fees and Costs**

Class Counsel will ask this Court to reimburse Class Counsel for $262,985.01 in reasonable costs that would normally be charged to a fee-paying client. Bonner Decl. ¶ 46. That amount will cover money paid for developing a custom database to track and communicate with over 9,000 named Plaintiffs, outside consultants to manage communication with over 9,000 named Plaintiffs, and Plaintiffs' pro-rata share of document hosting to date for discovery in the litigation through July 2022. *Id.* Developers have separately agreed to pay up to $50,000 of costs for 17 months of mediation with JAMS, independent of the Settlement Fund. *Id.*

Class Counsel will then ask the court to award attorneys' fees in the amount of $1,137,015.00, or 21.06% of the Settlement Fund. Class Counsel will not be paid until after final approval. Bonner Decl. ¶¶47-48. Class Counsel's request for 21.06% of the Settlement Fund in attorneys' fees is a fraction of their lodestar and is below the Ninth Circuit's benchmark. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (25% benchmark standard in class action settlements). This fee is appropriate in light of the *Vizcaino* factors discussed throughout this motion, including the favorable result achieved for the class; the skill, experience, and performance of counsel on both sides; the contingent nature of Class Counsel's fees; and the fees awarded in comparable cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Indeed, in the related *Pennington* action, this Court ultimately awarded a slightly higher percentage—approximately 25% to Class Counsel.

**B. NORTHERN DISTRICT'S PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS**

    **1. Information About the Settlement**

        *a. Class Definition*

In the operative complaint (ECF 114), the proposed class is defined as:

"all persons who are RESIDENTS OF BAYVIEW HUNTERS POINT, consisting of individuals who have been living, working, attending school or had substantial contact with the community in the Hunters Point Zip Code 94124 from 2004 to present to date of Judgment in this matter."

The proposed settlement class is defined as: "The Class Plaintiffs are current or former residents of BAYVIEW HUNTERS POINT, consisting of individuals who reside or did reside in the Bayview Hunters Point community, Postal Zip Code 94124 from 2004 to present, as well as all parties named in Amended Exhibit A, ECF Doc 154." The proposed settlement class includes only the Plaintiffs named in the Fifth Amended Complaint and individuals who live or lived in the 94124 Zip Code.

Settling the claims of all the individually named Plaintiffs together with the proposed class is appropriate because some of those individuals have claims based on their contacts with the 94124 Zip Code during the relevant time period that do not include any period of residency. Instead, those named Plaintiffs worked in or otherwise maintained significant contact with the 94124 Zip Code during that time. Crafting a class definition that would be sufficiently broad to incorporate all individuals who may have fear of cancer based on their interactions with the 94124 Zip Code while still satisfying the commonality and predominance requirements of Rule 23 is not feasible. However, the named Plaintiffs have the same basis to claim damages as current and former residents—i.e., fear of cancer based on their exposure to potentially harmful chemicals while having spent significant time in the 94124 Zip Code (whether by working, going to school, or visiting relatives).

The class definition is fair and reasonable even though some individuals who worked or spent significant time in the 94124 Zip Code will not participate in the settlement. However, given the significant media attention surrounding this case and the numerous meetings Class Counsel participated in within the community, non-residents with the most significant connection to the community and the most viable claims can be expected to be reflected in the list of named Plaintiffs. Amended Exhibit A, ECF Doc 154.Further, non-residents who worked or spent significant time in 94124, but are not named in the current lawsuit, will not waive their right to bring their own actions as a result of this settlement.

### b. Claims Released

There are no material differences in the claims to be released and the claims in the operative complaint, both of which encompass all claims against Developers relating to the development of HPNS. *Compare* ECF No. 114 (claims against Developers for negligence, violation of Proposition 65, fraud, nuisance, wrongful death, and injunctive relief) *with* Settlement Agreement at V.H (release applies to "personal injury claims, negligence and nuisance claims, strict liability claims, claims for injunctive relief or general, specific, and punitive damages relating to the development of any portion of HPNS and California Proposition 65 claims").

### c. Settlement Value v. Potential Recovery at Trial

As discussed above, it is difficult to place a precise value on Plaintiffs' subjective emotional harm, which may vary considerably among the class. However, assuming an average award to each class member of between $2,500 and $5,000, Plaintiffs could recover anywhere between $87,500,000 to $175,000,000 (and punitive damages could potentially push that number higher) although Class Counsel expects that the bulk of such an award would be attributable to Tetra Tech rather than the Developers.  The Settlement Fund represents between 3.1% and 6.2% of the upper end of that range, and the amount available to class members represents between 2.3% and 4.6% of that amount if the Court grants Class Counsel's full request for attorneys' fees and costs.

After weighing the potential for recovering punitive and fear of cancer damages against the benefits of an early, substantial settlement from the alleged tortfeasors who Plaintiffs even claim are significantly less culpable than Tetra Tech, Plaintiffs determined that settlement was in their best interests. Plaintiffs believe that Developers and Tetra Tech are jointly and severally liable for Plaintiffs' damages, and they expect to recover the remaining damages from Tetra Tech, who are alleged by Plaintiffs to be far more culpable than Developers. If the case were to go to trial, the factfinder would allocate comparative fault (if any) between Developers and Tetra Tech. A factfinder could conceivably assign only five percent fault to the Developers. Under that scenario, this proposed settlement would have roughly equal value to the damages recoverable from

Developers (i.e., 5% vs. 2.3-4.6%). If the factfinder were to assign 50 percent fault to Developers, this settlement would be between 4.6% and 9.1% of total damages.[3]

Furthermore, given that the medical monitoring and other nonmonetary aspects of the settlement are time-sensitive, obtaining these benefits now—not years down the line, if ever—weighs in favor of a certain recovery now compared to the potential for a higher recovery in the future. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

### d. The Proposed Plan of Allocation for the Settlement Fund

As previously described, the Settlement Fund will be allocated to cash payments to current and former residents and a medical monitoring fund for environmental exposure testing for Hunters Point residents, as well as the amount that the Court awards in attorneys' fees and expenses.[4]

The Parties propose that $3,500,000 be set aside for cash payments to named Plaintiffs and current residents of Hunters Point, each of whom will be entitled to receive an equal share of that amount, to be determined based on how many valid claims are submitted. Providing equal payments to all of these individuals is fair and reasonable here, because each has the same harm (i.e., fear of cancer or other illness induced by exposure to toxic chemicals). Bonner Decl. ¶ 39. Moreover, assigning the majority of the settlement benefits to named Plaintiffs and current residents is also reasonable, as these individuals have the most viable claims, based on the allegations in Plaintiffs' Fifth Amended Complaint. Bonner Decl. ¶ 39.

The Parties further propose that $100,000 be set aside for cash payments to former residents of Hunters Point who lived in the area at any time between 2004, and the date that preliminary

---

[3] Assuming Plaintiffs' plausible maximum recovery is between $87,500,000 and $175,000,000 and half of that range could be attributable to Developers ($43,750,000-$87,500,000), the $4 million in funds allocated to the class represents 9.1% of the low end of recovery and 4.6% of the high end.

[4] Plaintiffs' counsel intends to seek a total of $1,400,000 in total fees and expenses. If the Court awards less than that number, any remaining amounts would be added to the claims-made payments to current residents.

approval of this Settlement is granted. As with the named Plaintiffs and current residents, each of these settlement class members will be entitled to receive an equal share of the $100,000 reserved for their claims, to be determined based on how many valid claims from former residents are submitted. However, the maximum amount that former residents can receive is capped at $100, and any funds remaining after the claims process will be added to the amounts payable to named Plaintiffs and current residents (i.e., if fewer than 1000 former residents submit claims, the remainder will be added to the fund for current residents). Assigning a lower amount of the settlement benefits and capping maximum recovery for former residents is fair and reasonable, because these individuals have less viable claims against Developers, given that former residents would have a more difficult time proving ongoing potential exposure to toxic chemicals and therefore have less reasonable grounds for alleging a fear of developing cancer or other illness.

Finally, $400,000 shall be set aside for a medical monitoring fund. These funds will be administered according to the Medical Monitoring Fund Plan. Bonner Decl. ¶¶ 49-53; Dahlgren M.D.  Decl. 15-19. The Medical Monitoring Fund Plan estimates that the funds will be sufficient to provide bio-monitoring evaluation for the presence of radioactive and other toxic chemicals to more than one thousand members of the class, to be selected on a random basis. Given the size of the medical monitoring fund, Dr. Dahlgren's proposed protocol will provide statistical information on the extent of contamination in the areas adjacent to the HPNS.  *Id.* Reporting on the number of people tested and the amounts spent from the medical monitoring fund will be made available publicly. Bonner Decl. ¶ 52(g).

The final component of the class settlement is extremely valuable: oversight of Lennar's dust mitigation measures for work at HPNS through the review of weekly site monitoring reports. This will benefit all members of the class equally because the increased oversight will help to provide class members with reassurance that appropriate environmental health and safety measures are in place.

### e. Estimate of Number of Claims

Given the number of named Plaintiffs and the robust proposed notice plan, Class Counsel anticipates that there will be between 12,000 and 15,000 claims. Bonner Decl. ¶ 39. Class members will have a variety of options to choose how they will receive payment, including conventional checks, PayPal, Zelle, Venmo, or Digital MasterCard. Finegan (Kroll) Decl. ¶ 30. For class members who choose conventional checks, any checks that remain uncashed after 180 days will be voided and re-distributed to the Class or to an appropriate *cy pres* recipient to be approved by the Court. *Id.*

### f. Reversions

Under no circumstances will any portion of the Settlement Fund revert back to Developers. Bonner Decl. ¶ 48.

## 2. Settlement Administration

The Parties have selected Kroll Settlement Administration as the Settlement Administrator after a competitive bidding process.  Bonner Decl. ¶ 32. Class Counsel sent requests for proposals to four settlement administration firms with experience handling complex class actions. Three firms responded with detailed proposals. The Parties selected Kroll because of their competitive pricing and experience with digital notice campaigns.  *Id.*

Developers have agreed to pay $50,000 towards the settlement administration, separate from the Settlement Fund. The Parties propose that costs of settlement administration above $50,000 (and up to a maximum of $80,000) be taken proportionately from the portion of the Settlement Fund allocated to cash payments to current and former residents. Any remaining administration costs would be paid by Class Counsel from the Court's award of fees and expenses.

## 3. Notice

The Notice Plan includes the following: direct mail notice (postcards); outdoor billboard advertising; online display banner advertising; social media advertising; an informational website; and a toll-free information line (hereafter, "Notice Plan").  Finegan (Kroll) Decl. ¶¶ 13-31; Bonner Decl. ¶¶ 38-39. Kroll will utilize a leading provider of business data to identify all residential

mailing addresses in Zip Code 94124, send postcard notices to all addresses, resend any returned notices that include a forwarding address, and skip trace any returned notices for which no forwarding address is provided. Finegan (Kroll) Decl. ¶¶ 21-24. The notice will direct potential Class Members to a website dedicated specifically to this settlement where they can submit a claim. Finegan (Kroll) Decl. ¶¶ 28-30.

All potential class members who are not listed on Exhibit A will be required to submit a claim form with some form of evidence to prove that they live or lived in the 94124 Zip Code during the required period. Finegan (Kroll) Decl. ¶29; Bonner Decl. ¶¶ 39; Exh. D Class Claim Form. Parents will also be able to file claims on behalf of their minor children. *Id.* Named plaintiffs listed on Exhibit A will not need to submit a claim form to participate in the settlement, but Class Counsel will reconfirm the identity and accuracy of those listed on Exhibit A. *Id.* The settlement funds will be divided pro-rata among all class members who submit a valid claim. *Id.*

The claims administrators will screen claims to reduce or prevent fraudulent claims. Finegan (Kroll) Decl. ¶ 29. The anti-fraud measures will include screening for known suspicious filers, screening for many claims coming from the same IP address, determining duplicate claims, and requiring a Captcha to ensure claims are submitted by a human. *Id.*

The settlement website will provide access to additional information, including the Long Form Notice, the motion for preliminary approval, the motion for attorneys' fees and costs, other important documents in the case, important dates, and deadlines. Finegan (Kroll) Decl. ¶28, Bonner Decl. ¶38. The Long Form Notice contains contact information for counsel to answer questions, and instructions for accessing the case docket via PACER or in person at the court's locations. Bonner Decl. ¶ 34, Exh. B. The notice will state the date of the final approval hearing with a caveat that the date may change without further notice to the Class Members. The Long Form Notice will instruct Class Members to check the settlement website or PACER to confirm that the date has not changed. *Id.*

**4. Request for Exclusion**

The proposed Long Form Notice instructs Class Members who wish to opt out of the settlement to send a letter to the Claims Administrator with the information needed to opt out of the settlement.  Bonner Decl. ¶ 34, Exh. B. That information includes the Class Member's name, mailing address, contact information, and signature. The proposed Long Form Notice also advises the Class Members of the deadline to opt out and the consequences of doing so. *Id*.

**5. Objections**

The Long Form Notice instructs Class Members who wish to object to the settlement to send their written objections only to the Court. The Long Form Notice includes the language suggested by the Procedural Guidance for Class Action Settlements in the United States District Court, Northern District of California. Bonner Decl. ¶ 34, Exh. B.

**6. Attorneys' Fees**

Class Counsel intends to request that the Court award the full amount of costs and expenses incurred to date ($262,985.01) and attorneys' fees in the amount of $1,137,014.99. Bonner Decl. ¶ 46. If the Court awards Class Counsel the full $1,137,014.99 in attorneys' fees, it would represent approximately 21.06% of the Settlement Fund. Bonner Decl. ¶ 47. This fee is consistent with both this Circuit's benchmark rate, *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011), and California law.  *See Laffitte v. Robert Half Int'l Inc.,* 1 Cal.5th 480 205 Cal.Rptr.3d 555, 376 P.3d 672 (2016); *see also Mangold v. Cal. Public Util. Commc'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."). It is also reasonable in light of Class Counsel's significant work on this litigation overall, which to date includes at least 1,500 hours of work by partners, paralegals, and law clerks. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Class Counsel will submit a separate fee application to support the request.

**7. Cy Pres**

In the event that funds remain due to uncashed checks, and the Settlement Administrator determines that the cost of further pro-rata distributions will require more than half of the remaining funds, then Parties propose that the relevant sums shall be distributed by the Settlement Administrator to the Muhammad University of Islam, Grades K-12, located at 195-A Kiska Road, 94124 in Hunters Point, adjacent to and abutting the fence line of Parcel A of HPNS, a charity jointly chosen by Developers and Class Counsel.  Bonner Decl. ¶ 31. This charity supports the Class Members, and from the inception of this lawsuit, has accommodated several Class Member meetings.  As an educational institution, it also benefits the young people of the HPNS community. *Id.*

**9. Timeline**

The Parties propose the following timeline for events following this Court's Order preliminarily approving the settlement:

| Mail Notice | 30 days after Order |
| --- | --- |
| Class Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses | 30 days after Order |
| Exclusion and Objection Deadline | 120 days after Order |
| Motion for Final Approval and Motion for Good Faith Determination | 150 days after Order |
| Final Approval Hearing and Hearing on Motion for Good Faith Determination | 185 days after Order |

**10. CAFA Notice**

Developers are required to notify the Attorney General of the United States and the California Attorney General or the primary regulator, supervisor, or licensing authority to whom the Developers are responsible. 28 U.S.C. § 1715. Developers have confirmed that they will prepare the CAFA notice, and the Settlement Administrator will serve that notice within ten days of this motion being filed.

**11. Past Distributions**

*In re: CHEVRON REFINERY FIRE CASES, SHIELDS, et al. v. CHEVRON U.S.A. INC.,*
*et al.* (CASE NO. MSC13-00162) complex mass action based on the 2012 Chevron refinery fire.
The plaintiffs' allegations were based on exposure to smoke that filled the community as a result
of the refinery fire. Over 20,000 individuals were named in multiple lawsuits. Our office filed
claims on behalf of approximately 5,000 individual plaintiffs. The matter settled at mediation for
$15,000,000 to be distributed by a special master based on the total number of plaintiffs who had
completed a plaintiff fact sheet and timely submitted a settlement release. Our office provided
notice via mail, email, and telephone. The total number of our clients who completed a fact sheet,
submitted a release, and received settlement payments was 2,044. The average gross settlement
was $695. Our office received $472,847.30 in attorneys' fees and $96,983.33 in costs.

**C. THIS COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR
SETTLEMENT PURPOSES**

Plaintiffs respectfully request that this court conditionally certify the Class for settlement
purposes only. The proposed class, which consists of "[a]ll current residents of Postal Zip Code
94124 and any individuals who previously resided in Postal Zip Code 94124 at any time between
January 1, 2004 and the date on which this Settlement Agreement receives preliminary approval,
as well as all parties named in Amended Exhibit A to Plaintiffs' Fifth Amended Complaint"
satisfies the requirements of Rule 23(a) and Rule 23(b)(2).

**1. This Settlement Meets the Prerequisites of Subdivision (a) of Rule 23.**

*a. Numerosity*

The members of the class are so numerous, approximately 35,000 current residents as well
as some additional number of former residents, that joining them all individually would be
impractical.

*b. Commonality*

Commonality is generally satisfied by the existence of a single issue of law or fact common
across all class members. *Newberg on Class Actions* (5th Ed.) § 3:18. Common questions here
include (1) whether Tetra Tech's misconduct caused contaminated soils to remain at HPNS,

including Parcel A; (2) whether Developers engaged in excavation and digging without taking adequate safety precautions; and (3) whether Developers provided Plaintiffs with adequate notice as required by California's Proposition 65. These questions are not only common to the class, but additionally predominate over questions affecting only individual members.

### c. Typicality

As set out above, Ms. Harrison's claims are typical of the class she seeks to represent. *See supra,* Section II.A.1.  Ms. Harrison currently lives in the 94124 Zip Code. She resided at 19 Kiska Road, San Francisco, CA 94124. She was aware of the Developers' renewed digging, which caused her to become concerned about her health. Harrison Decl. ¶ 8. The class claims are fairly encompassed by Ms. Harrison's claims. *See General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330 (1980).

### d. Adequacy of Representation

As discussed in § II.A.1, *supra* (class representative), and § II.D, *infra* (counsel), the class representative and Class Counsel have adequately and fairly protected the interests of the class.

### 2. This Settlement Meets the Requirements of Subdivision (b)(3) of Rule 23.

Questions of law and fact common to Class Members predominate over questions affecting only individual Class Members. Rule 23(b)(3). This case turns on the alleged contamination of HPNS, Developers' knowledge of that alleged contamination on Parcel A, and their alleged failure to adequately institute dust mitigation measures during construction or properly provide Proposition 65 notices to the community. Those questions are subject to generalized class-wide proof and answering them will not require evidence that varies from member to member. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

A class action is also the superior mechanism for resolving this case compared to other available methods for fairly and efficiently adjudicating the controversy. Rule 23(b)(3). Class Counsel represents roughly 9,000 Class Members, as identified in Exhibit A to the Fifth Amended Complaint.  ECF No. 154. The class has a high degree of cohesion, and the prosecution of the action as a class action is unobjectionable. Class Counsel is unaware of any class member who

prefers to individually control the prosecution of a separate action. Bonner Decl. 42. A class action in this district is desirable because all other HPNS litigation is pending before this Court. A class action would not present intractable management problems where, like here, the Parties request settlement-only certification. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

## D. THIS COURT SHOULD APPOINT BONNER & BONNER AS CLASS COUNSEL FOR PURPOSES OF SETTLEMENT

When certifying a class, including for settlement purposes, the Court should appoint Class Counsel. Rule 23(g)(1). When appointing the Class Counsel, the Court must consider: (i) the work counsel has done on the case; (ii) counsel's prior experience with similar complex cases; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Rule 23(g)(1)(A).

Class Counsel has been involved in several comparable complex class or mass settlements. Prior class and mass actions include the following (Bonner Decl. ¶ 54):

a. MARIO V, et al. v ALISAL UNION SCHOOL DISTRICT, et al. 18-CV-00041-BLF- complex health exposure case, settled prior to class certification.

b. Barre v. AT&T Corp. 16-cv-04856-VC; Larson v. AT&T Corp., 16-cv-04858-VC; Goodman v. AT&T Corp., 16-cv-04861-VC; Dolmage v. AT&T Corp. 16-cv-04862-VC; Jolin v. AT&T Corp., 16-cv-04863-VC; Xavier Aquino v. AT&T Corp., 16-cv-04864-VC; King v. AT&T Corp., 16-cv-04865-VC – Complex wage and hour class actions that were all settled prior to class certification.

c. In re: CHEVRON REFINERY FIRE CASES, SHIELDS, et al. v. CHEVRON U.S.A. INC., et al. (CASE NO. MSC13-00162) complex mass action based on 2012 Chevron refinery fire.

Lead Plaintiffs' counsel Charles A. Bonner has been practicing law in the San Francisco Bay Area, with a focus on personal injuries, civil rights, and employment litigation since 1979. Mr. Charles Bonner has been the lead attorney in the trials of more than 80 cases, including many employment cases. Over the last seven (7) years, Mr. Charles Bonner has litigated and settled over 100 cases, many of which involved whistleblowers and civil rights claims, against municipal

entities. Recently, Mr. Charles Bonner was lead or co-counsel in the following cases: *Brown v. City of Oakland*, et al. Oakland, CA, Top 50 Personal Injury Verdicts in California in 2018; *Grant v. City of Syracuse, et al*., Syracuse New York, Top 100 Civil Rights Violation Verdicts in the United States in 2018; Top 100 Personal Injury Verdicts in New York in 2018; *Lewis v. Government of the District of Columb*ia, Washington DC, Top 100 Labor & Employment Verdicts in the United States in 2018. Bonner Decl. ¶ 55.

During the course of more than 40 years of practice, Mr. Charles Bonner has been the lead attorney, co-counsel, and an associate with skilled, knowledgeable, and reputable civil rights attorneys such as John Burris, Senator John Edwards, John Scott, Howard Moore, Jr., Oliver Jones, Pamela Price, and others. Mr. Charles Bonner was elected and served for 10 years on the Board of Directors of the California Trial Lawyers Association, (currently Consumers Attorneys of California) and served on the legislative committee for civil rights and employment law. Mr. Charles Bonner is also a graduate of the Gerry Spence Trial Lawyers College located in Dubois, Wyoming.  Bonner Decl. ¶ 56.

Mr. Charles Bonner has been lead or co-counsel on numerous complex state and federal cases in California and across the country. Along with his partner, A. Cabral Bonner, Mr. Charles Bonner has been or is currently admitted *pro hac vice* in the following courts in employment, civil rights, and personal injury cases: The United States District Court for the Northern District of New York (*Grant, et al v. City of Syracuse, et al.* Case No.: 5:15-CV-445; *Crawley v. City of Syracuse et al.* Case No. 5:17-cv-01389-DNH-TWD; *Boykins v. City of Syracuse et al.* Case No.: 5:18-cv-01378-LEK-TWD); The United States District Court for the Western District of New York (*Lawrence et al v. Village of Newark et al.* Case No. 6:19-cv-06233-EAW-MJP) The United States District Court for the Central District Of Illinois Rock Island Division (*Bensenberg v. FCA US LLC* Case No. 4:17-cv-04213-SLD-JEH); The United States District Court for the Southern District of Alabama (*K. et al v. Mobile County Board of Education et al*. Case No. 1:18-cv-00343-TFM-N); The United States District Court for the Eastern District of North Carolina (*Oates, et al v. Lolita Chapman et al.* Case No. 5:16-cv-00623-FL). Class Counsel are also admitted in all the

1    Federal District Courts in California, including the United States Courts of Appeals for the Ninth
2    Circuit. Bonner Decl. ¶ 57.

3                                    **III.    CONCLUSION**

4           For the foregoing reasons, Plaintiffs respectfully ask this court to enter an order: (1)
5    preliminarily approving the Parties' settlement; (2) conditionally certifying the class for settlement
6    purposes only; (3) appointing Bonner & Bonner as lead Class Counsel; (4) approving the Plan of
7    Allocation; and (5) approving the Notice Plan.

8    **Dated: November 3, 2022**

9                                            **LAW OFFICES OF BONNER & BONNER**

10                                           */s/Charles A. Bonner*
                                             Charles A. Bonner
11                                           Attorney for Plaintiffs