CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF CHARLES A. BONNER**
475 GATE FIVE RD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BAYVIEW HUNTERS POINT RESIDENTS, DANIELLE CARPENTER, CHRISTOPHER CARPENTER, DECEASED, BY DANIELLE CARPENTER, REPRESENTATIVE AND SUCCESSOR IN INTEREST; CATHERINE MUHAMMAD, ***Including All Parties Listed In Exhibit A***; and Doe Plaintiffs 1-40,000, on behalf of themselves, and all others similarly situated, | Case No.: 3:19-cv-01417-JD |
|      Plaintiffs, | **DECLARATION OF CHARLES A. BONNER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF *BAYVIEW HUNTERS POINT RESIDENTS* CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS** |
|      vs. | |
| TETRA TECH EC, INC.; TETRA TECH, INC; DAN L. BATRACK, *In his Individual and Official Capacity*, CHAIRMAN, CHIEF EXECUTIVE OFFICER and PRESIDENT of TETRA TECH; STEVEN M. BURDICK, *In his Individual and Official Capacity,* EXECUTIVE VICE PRESIDENT, CHIEF FINANCIAL OFFICER OF TETRA TECH; STEPHEN C. ROLFE, *In his Individual and Official Capacity,* MANAGING AGENT OF TETRA TECH EC INC.; JUSTIN E. HUBBARD, *In his Individual and Official Capacity,* MANAGING AGENT OF TETRA TECH EC INC.; LENNAR CORPORATION; and FIVE POINT HOLDINGS, LLC., and DOES 1-100 Inclusive, |  **DATE:  December 8, 2022**<br>**TIME:   10:00 am**<br>**DEPT.:  11**<br>**JUDGE: HONORABLE J. DONATO** |
|     Defendants. | |

I, CHARLES A. BONNER, declare as follows:

1.      I am an attorney duly licensed by the State of California duly to practice law before all courts in the State of California, including the United States District Court for the Northern District of California.

2.      My business address is 475 GATE FIVE ROAD, SUITE 211, SAUSALITO, CA 94965.

3.      I have personal knowledge of the matters set forth herein, except those stated on information and belief. If called as a witness, I could competently testify thereto. I make this declaration pursuant to 28 U.S.C. § 1746.

4.      I make this Declaration in support of the BAYVIEW HUNTERS POINT RESIDENT Plaintiffs' motion for preliminary approval of the settlement with Defendants LENNAR CORPORATION and FIVE POINT HOLDINGS, LLC (collectively, the "Homebuilders.")

5.      I have been involved in this litigation since its inception. Bonner & Bonner was initially alerted to Tetra Tech's fraud when we were contacted by individuals from the Muhammad University of Islam, which is located directly next to Parcel A in Hunters Point. I met with Catherine Muhammad, Rashida Adul Muhammad, Danielle Carpenter, and other members of the Hunters Point Community. These individuals explained to me how their community was being devastated by the contamination that Tetra Tech was supposed to clean up. We took this case on a contingency basis. Our office initially filed the case on behalf of several hundred community members. We currently represent more than 9000 community members who live or spent significant time in the 94124 Zip Code.

6.      During the course of the litigation, I have held frequent meetings with the community at large and with community leaders, including class representative ARIEANN HARRISON. The meetings were open to and attended by residents and non-residents alike. During these meetings, I learned that the overwhelming majority of the people who were present, approximately 200-300 at any given meeting, were suffering various illnesses they believed were caused by the toxic releases from the Shipyard, including radiation. At each of these various

DECLARATION OF CHARLES A. BONNER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF *BAYVIEW HUNTERS POINT RESIDENTS* CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS

Case No.: 3:19-cv-01417-JD                                                                              1

community meetings, I asked the people to raise their hands if they knew someone who lived in Hunters Point with any type of cancer. Invariably and repeatedly, over 90% of the people in the meetings raised their hands. I posed the same question regarding respiratory illnesses such as asthma. Again, a similar showing of hands. While I did not ask whether anyone present had cancer, many people came up to me individually and confided that they were suffering from cancer. I also learned during these meetings that a brain cancer cluster was detected in individuals living across the street from the fence line of the Shipyard.

7.     The proposed class representative, ARIEANN HARRISON, has direct experience with the negative health effects suffered by the HPNS community due to the contamination present in the HPNS Superfund site.

8.     In addition to meeting with the community members, prior to filing the class action, I engaged in substantial and extensive research into the history of the Hunters Point Naval Shipyard, the contamination, the superfund site, Tetra Tech's failure to perform the contracted-for clean-up, and many reports and findings regarding Tetra Tech's fraud. I also reviewed various medical articles regarding the health effects of ionizing radiation and medical studies regarding cancer rates in Hunters Point being significantly higher than cancer rates in other Bay Area locations. I also consulted with experts in the matter of radiation, including Chris Busby, PhD, Mark Alexander, M.D., an epidemiologist, and Ahimsa Porter Sumchai, MD, who had conducted numerous urine analyses of people living in Hunters Point. The various urine analyses reflected residual radionuclides in their urine that could only have been caused by the radiation at the Shipyard.

9.     After considerable review of documents and meetings with the community at large and with community leaders, on February 13, 2019, Bonner & Bonner filed and served on Tetra Tech, the Second Amended Complaint on behalf of 2555 plaintiffs and the putative class of individuals who lived or spent significant time in the 94124 Zip Code.  (ECF Doc 1- Notice of Removal). The lawsuit was open to residents and non-residents, as long as the individuals had significant contact with the 94124 Zip Code.

10.     The Second Amended Complaint named two groups of Defendants: the Tetra Tech Defendants and the Homebuilder Defendants. The Tetra Tech Defendants included the following defendants: TETRA TECH EC, INC.; TETRA TECH, INC; DAN L. BATRACK, In his Individual and Official Capacity, CHAIRMAN, CHIEF EXECUTIVE OFFICER and PRESIDENT of TETRA TECH; STEVEN M. BURDICK, In his Individual and Official Capacity, EXECUTIVE VICE PRESIDENT, CHIEF FINANCIAL OFFICER OF TETRA TECH; STEPHEN C. ROLFE, In his Individual and Official Capacity, MANAGING AGENT OF TETRA TECH EC INC.; JUSTIN E. HUBBARD, In his Individual and Official Capacity, MANAGING AGENT OF TETRA TECH EC INC. The Homebuilder Defendants included LENNAR CORPORATION and FIVE POINT HOLDINGS, LLC.

11.     By Stipulation, on November 18, 2019, Bonner & Bonner filed a Third Amended Complaint on behalf of 3929 class members (ECF Doc 29).

12.     Following a further stipulation, on March 20, 2020, Bonner & Bonner filed a Fourth Amended Complaint ("4th AC") (ECF Doc 43). The 4th AC named Defendants LENNAR CORPORATION and FIVE POINT HOLDINGS, LLC (collectively, the "Homebuilders") solely in the thirteenth cause of action for injunctive relief. Paragraph 239 of the Fourth Amended Complaint states the following: "Plaintiffs have repeatedly demanded that DEFENDANTS stop the development until thorough, complete, and verified test results prove that all the toxins and radioactive materials have been removed, but DEFENDANTS have ignored Plaintiffs' demands." Plaintiffs named the Homebuilders in an effort to prevent them from taking further steps to develop the property and thereby potentially release additional toxins into the community.

13.     Plaintiffs intentionally did not name the Homebuilders in any of the other causes of action because they saw the Homebuilders as a less culpable tortfeasor and as fellow victims of Tetra Tech's fraud.

14.     On June 17, 2020, Plaintiffs learned that the Homebuilders re-commenced their development efforts and were digging and excavating a section of Parcel A in the Hunters Point Shipyard directly adjacent to a chain-link fence dividing the Shipyard from a school and residences along Kiska Road.

15.     Many different members of the community observed the digging and reported it to our office and me personally. Based on the videos and photographs of the digging, it appeared that the workers were not utilizing sufficient dust or particulate mitigation efforts. Members of the community indicated that they had not received notice from Lennar under California's Proposition 65 law.

16.     In an effort to address and resolve Plaintiffs' claims, on or about October 2020, the Homebuilders agreed to engage in mediation, engaging the services of mediators, Judge Daniel Weinstein (Ret.) and Lizbeth Hasse, Esq. Plaintiffs had three demands of the Homebuilders: 1) provide assurance that future excavation and development would be undertaken in a safe and compliant manner by engaging a third party entity to monitor LENNAR'S construction within the Naval base; 2) provide funding devoted to medical monitoring in the community; and 3) money damages.

17.     On or about April 30, 2021, Plaintiffs filed their Fifth Amended Complaint, which included additional allegations against the Homebuilders (ECF No. 114). We added those allegations against the Homebuilders in response to the new digging.

18.     On June 17, 2021, Plaintiffs filed a Motion for An Order To Show Cause Directing Defendant LENNAR and FIVE POINT to show why a temporary restraining order should not issue for their failure to comply with Proposition 65 regarding their release of toxic materials, including radionuclides (ECF No. 132, "Show Cause Motion").

19.     On September 21, 2021, Plaintiffs filed an amended and corrected Exhibit A listing 9517 Plaintiffs named in the Fifth Amended Complaint (ECF No 154).

20.     On October 19, 2021, Defendants Tetra Tech EC, Inc., Tetra Tech, Inc, Dan L. Batrack, and Steven M. Burdick, brought a motion to dismiss Plaintiff's Fifth Amended Complaint. On October 19, 2021, the Homebuilder Defendants Joined Tetra Tech's motion to dismiss.

21.     While the Homebuilders joined in Tetra Tech's motion to dismiss, the parties continued to engage in mediation. To this end, the parties engaged in extended back-and-forth communication, through the mediators, on the factual and legal issues surrounding Plaintiffs'

Order to Show Cause. This required further additional investigation into the facts and law surrounding the Homebuilder's conduct on Parcel A.

22. Additionally, in response to Plaintiffs' Show Cause Motion, the Homebuilder Defendants propounded written discovery and took depositions of several individuals who provided the declarations that were attached to the Show Cause Motion.

23. Plaintiffs and the Homebuilders continued with their mediation efforts before Judge Weinstein and Lizbeth Hasse. On November 23, 2021, in response to a mediator's proposal, Plaintiffs and the Homebuilders entered into a settlement agreement subject to Court approval. A true and correct copy of the Settlement Agreement is attached as Exhibit A.

24. The Settlement positions were primarily and predominantly communicated through JAMS rather than directly between the Parties' counsel.

25. Consistent with the interests of both parties, the terms of the settlement are set forth in the final Settlement agreement and include non-monetary and monetary consideration. The non-monetary consideration is the following: "During the period of one year from the final settlement approval, or until the completion of site grading at Parcel A, whichever occurs first, Lennar shall cause the Site Monitor to provide their weekly site monitoring report on a confidential basis to the Mediators for a review of the process and protocols in place." The monetary consideration includes the following: "In consideration for the Release contained in this Settlement Agreement, and without admitting liability for any of the alleged acts or omissions alleged in the Complaints, and in the interest of minimizing the costs inherent in any litigation, the total sum of the Settlement Fund (i.e., Five Million, Four Hundred Thousand Dollars and No Cents ($5,400,000.00)) will be paid by or on behalf of the Released Parties."

26. Since February 2018, I personally spent in excess of 1000 hours researching and drafting the complaints and the show cause motion, assessing the Proposition 65 notices, negotiating terms of the settlement, engaging with and informing the lead plaintiffs and the community about the litigation, visiting HPNS, and researching issues related to the settlement approval, discussing the settlement with the lead plaintiffs, analyzing the fairness of the consideration and release, and working to devise a fair claims plan. Cabral Bonner and staff have

spent over 500 hours. Our time devoted to the workup of the case and settlement negotiations with the Homebuilder Defendants will be described in detail in our Motion for Fees and Costs.

27.     Additionally, I have met with several health care providers regarding the medical needs of the community that relates to the conduct of all the Defendants. Specifically, I have worked closely with James Dahlgren, M.D., who has provided a declaration setting forth his opinion on community exposure and a proposed framework for medical monitoring. Attached to this Declaration as Exhibit E is Dr. Dahlgren's Declaration.

28.     Dr. Dahlgren's declaration provides the following recommendations for the $400,000 medical monitoring fund: "I estimate that the total cost per person will be about $350, which will allow at least 1,100 people to get tested. The $350 cost includes roughly $200 to test for radioactive elements like plutonium, with another $100 for analyzing the data. There will also be a health questionnaire, which will cost roughly $50."

29.     While the potential class is much larger than 1100 individuals, given the culpability of the Homebuilder Defendants compared to Tetra Tech, the $400,000 medical monitoring fund is reasonable. This fund will provide access to testing to a meaningful portion of the community and is designed to create a baseline of information regarding the health impact on the community.

30.     Bonner & Bonner and counsel for the Homebuilders (collectively, the "Parties") did not negotiate over attorney's fees and costs. After reaching a settlement, the Parties agreed on reasonable allocations for the three settlement funds and reasonable attorney's fees and costs.

31.     The Parties agreed to Muhammad University of Islam, Grades K-12, located at 195-A Kiska Road, 94124 in Hunters Point as the Cy Pres recipient should any funds allocated to the class remain unclaimed. This charity supports the community and has provided logistical support to the legal effort, including accommodating several meetings for Plaintiffs and community members.

32.     The parties have selected Kroll Settlement Administration LLC as the settlement administrator after a competitive bidding process. Bonner & Bonner sent requests for proposals to five settlement administration firms with experience handling complex class actions. Three firms responded with detailed proposals. The Parties met with all three firms and provided feedback on

the proposals. Based on the feedback, all three firms provided updated proposals. The Parties selected Kroll after considering all of the proposals, their competitive pricing and experience with digital notice campaigns.

33.     The cost of settlement administration will come from the Defendants, the settlement fund, and any recovery paid to Bonner & Bonner. Separate from the Settlement Fund, Developers shall make an initial payment of Fifty Thousand Dollars ($50,000) towards expenses for notice and administration of this Settlement within fifteen (15) days after the Court enters the Preliminary Approval Order. If settlement administration expenses exceed $50,000, up to Eighty Thousand Dollars ($80,000) from the Settlement Fund shall be paid towards the total costs of notice and administration, to be taken proportionately from the portion of the Settlement Fund allocated to pay the Settlement Share for Current Residents and the Settlement Share for Former Residents. Any settlement administration expenses in excess of One Hundred Thirty Thousand Dollars ($130,000) shall be paid from the portion of the Settlement Fund that the Court allocates for Attorneys' Fees and Expenses.

34.     The Long Form Notice contains contact information for counsel to answer questions and instructions for accessing the case docket via PACER or in person at the court's locations. The Long Form Notice will instruct Class Members to check the settlement website or PACER to confirm that the date of the final approval hearing has not changed. The proposed Long Form Notice instructs Class Members who wish to opt-out of the settlement to send a letter to the Claims Administrator with the information needed to opt out of the settlement. The proposed Long Form Notice also advises the Class Members of the deadline to opt-out and the consequences of doing so.

35.     A true and correct copy of the Long Form Notice is attached hereto as Exhibit B.

36.     A true and correct copy of the Postcard Notice is attached hereto as Exhibit C.

37.      Based on census data, Class Counsel is informed that there are around 35,000 individuals currently living in the 94124 Zip Code. Additionally, Class Counsel is informed that there are about 9500 residential addresses in the 94124 Zip Code.

38.     Kroll will provide direct notice to potential class members by sending postcards to all resident addresses. Kroll will also create a targeted social media campaign to provide notice to class members who no longer live in the 94125 Zip Code. Finally, Class Counsel will provide further notice to all named Plaintiffs. The settlement website will provide access to additional information, including the Long Form Notice, the motion for preliminary approval, the motion for attorneys' fees and costs, other important documents in the case, important dates, and deadlines.

39.     After receiving notice, potential class members will have the opportunity to submit a claim through a website created and maintained by Kroll. Class members who are not listed on Exhibit A will be required to fill out a claim form and upload or mail some form of evidence to prove that they live or lived in the 94124 Zip Code during the required period. Named plaintiffs listed on Exhibit A will not need to submit a claim form to participate in the settlement, but Class Counsel will reconfirm the identity of those listed on Exhibit A. The settlement funds will be divided pro-rata among class members who submit a valid claim, with current residents and named plaintiffs drawing from one fund and former residents drawing from another. Providing equal payments to all current residents and named plaintiffs is fair and reasonable here because these individuals have the same harm (i.e., fear of cancer or other illness induced by exposure to toxic chemicals). Given the number of named Plaintiffs and the robust proposed notice plan, Class Counsel anticipates that there will be between 12,000 and 15,000 claims.

40.     True and correct copies of the Class Claim Form and Class Exclusion form are attached hereto as Exhibit D.

41.     The proposed settlement and pro-rata allocation is fair in light of the fact that the claims against Lennar and Five Point were directly related to the recent digging activity. Further, for former residents who meet the class criteria (i.e., formerly lived in the Zip Code between 2004 to the date of preliminary approval of the settlement), a smaller share of the Settlement Fund has been set aside ($100,000), with recovery capped at no more than $100 per claim. That lower amount reflects both the uncertainty about the number of individuals falling within the class as well as the much lower viability of claims for those individuals against Developers, given that Plaintiffs primarily assert claims against Developers based on conduct beginning in 2020.

42.     Currently, none of the named Plaintiffs attribute any injury or illness to the Homebuilder's renewed digging efforts. While many plaintiffs are informed and believe they have injuries tied to the conduct of Tetra Tech, since the Homebuilders did not cause the underlying contamination and were not responsible for cleaning it up, the current settlement is fair and reasonable. Class Counsel is unaware of any class member who prefers to individually control the prosecution of a separate action.

43.     All of the claims against the Homebuilders will be released, including emotional distress claims for fear of cancer. Given that Homebuilders' liability is based on recent digging and construction activities, Homebuilders are significantly less culpable than Tetra Tech for Plaintiffs' injuries and damages. As such, the amount of consideration negotiated by both parties for Homebuilders' release is reasonable and supported by Plaintiffs.

44.     Plaintiffs decided to settle because the potential for recovering punitive and fear of cancer damages is outweighed by the benefits of an early, substantial settlement from the less-culpable tortfeasors.

45.     Bonner & Bonner has been involved in several comparable complex class or mass settlements. Prior class and mass actions include the following:

   a.  *MARIO V et al. v ALISAL UNION SCHOOL DISTRICT, et al.* 18-CV-00041-BLF-complex health exposure case, settled prior to class certification.

   b.  *Barre v. AT&T Corp.* 16-cv-04856-VC; *Larson v. AT&T Corp.,* 16-cv-04858-VC; *Goodman v. AT&T Corp.*, 16-cv-04861-VC; *Dolmage v. AT&T Corp.* 16-cv-04862-VC; Jolin v. AT&T Corp., 16-cv-04863-VC; *Xavier Aquino v. AT&T Corp.,* 16-cv-04864-VC; *King v. AT&T Corp.,* 16-cv-04865-VC – Complex wage and hour class actions that were all settled prior to class certification

   c.  *In re: CHEVRON REFINERY FIRE CASES, SHIELDS, et al. v. CHEVRON U.S.A. INC., et al. (CASE NO. MSC13-00162)* complex mass action based on 2012 Chevron refinery fire.

46.     Class Counsel will ask this Court to reimburse Class Counsel for $262,985.01 in reasonable costs that would normally be charged to a fee-paying client. That amount represents

money paid for developing a custom database to track and communicate with over 9,000 named plaintiffs, outside consultants to manage communication with over 9,000 named plaintiffs, Plaintiffs' pro-rata share of document hosting through July 2022, Plaintiffs' pro-rata share of the PFS repository, and for 17 months of mediation with JAMS.

47.     Class Counsel will ask the court to first reimburse their costs and expenses from the Gross Settlement of $5,400,000.  Class Counsel will then ask the court to award attorneys' fees in the amount of $1,137,014.99, or 21.06% of the Settlement Fund. This request for 21.06% of the Settlement Fund in attorneys' fees is a fraction of our lodestar.

48.     Class Counsel will not be paid until after final approval. Under no circumstances will any portion of the Settlement Fund revert back to Developers.

**Medical Monitoring Plan**

49.     Plaintiffs' purpose for the medical monitoring fund component of the settlement is to expand access to testing for members of the class and establish a baseline understanding of the state of health of the class members. See James Dahlgren Declaration attached as Exhibit E.

50.     Given the size of the proposed medical monitoring fund, $400,000, universal monitoring of every class member is not practicable at this time. Instead, as set forth below, Plaintiffs propose that the funds are used to provide a brief questionnaire and a basic urine screen for radioactive and other toxic metals for a randomly selected group of class members. See James Dahlgren Declaration attached as Exhibit E.

51.     In addition, the monetary component of the settlement means that any class members who have concerns about their health can choose to use their settlement funds to obtain testing or screening to determine the extent of their individual injury.

52.     Plaintiffs propose the following plan for the use of the $400,000 set aside for medical monitoring.

    a.   All funds will be placed in an interest-bearing account, which will only include the medical monitoring funds allocated under the settlement.

    b.   James Dahlgren, MD, and his team will randomly select roughly 1100 individuals who have submitted valid claims and are members of the settlement class and invite

the class members to receive a basic screening consisting of a brief questionnaire and a basic urine screen for radioactive and other toxic metals emanating from the HPNS.

   c.   Dr. Dahlgren and his team will select a random sample of class members who have lived in the exposure zone of one mile from HPNS for at least five years. The sample will include at least 1/3 exposed as children, age 0 to 18 and include 1/3 exposed from age 18 to 40.

   d.   Dr. Dahlgren will provide timely updates and invoices to Plaintiffs' counsel.

   e.   Plaintiffs' counsel will disburse funds from the Medical Monitoring Trust fund, to pay the invoices provided.

   f.   Dr. Dahlgren and his team have agreed to provide the services described above for the cost of $350 per class member. This plan should allow for 1100 individuals to obtain this basic screening.

   g.   Plaintiffs' counsel will provide periodic reporting to the public and the Court on the number of people tested and the amounts spent from the medical monitoring fund, including a final report once the funds have been spent.

   h.   Plaintiffs will use the information gathered from this sample to inform any future medical monitoring activity.

**Class Counsel**

53.    Bonner & Bonner has been involved in several comparable complex class or mass settlements. Prior class and mass actions include the following:

   a.   MARIO V et al. v ALISAL UNION SCHOOL DISTRICT, et al. 18-CV-00041-BLF- complex health exposure case, settled prior to class certification.

   b.   Barre v. AT&T Corp. 16-cv-04856-VC; Larson v. AT&T Corp., 16-cv-04858-VC; Goodman v. AT&T Corp., 16-cv-04861-VC;  Dolmage v. AT&T Corp. 16-cv-04862-VC; Jolin v. AT&T Corp., 16-cv-04863-VC; Xavier Aquino v. AT&T Corp., 16-cv-04864-VC; King v. AT&T Corp., 16-cv-04865-VC – Complex wage and hour class actions that were all settled prior to class certification

DECLARATION OF CHARLES A. BONNER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF *BAYVIEW HUNTERS POINT RESIDENTS* CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS

Case No.: 3:19-cv-01417-JD                11

c. In re: CHEVRON REFINERY FIRE CASES, SHIELDS, et al. v. CHEVRON U.S.A. INC., et al. (CASE NO. MSC13-00162) complex mass action based on 2012 Chevron refinery fire.

54. I have been practicing law in the San Francisco Bay Area, with a focus on personal injuries, civil rights and employment litigation since 1979. I have been the lead attorney in the trials of more than 80 cases, including many employment cases. Over the last seven (7) years I have litigated and settled over 100 cases, many of which involved whistleblowers and civil rights claims, against municipal entities. Recently I was lead or co-counsel in the following cases: *Brown v. City of Oakland*, et al. Oakland, CA, Top 50 Personal Injury Verdicts in California in 2018; *Grant v. City of Syracuse, et al*., Syracuse New York, Top 100 Civil Rights Violation Verdicts in the United States in 2018; Top 100 Personal Injury Verdicts in New York in 2018; *Lewis v. Government of the District of Columbia,* Washington DC, Top 100 Labor & Employment Verdicts in the United States in 2018.

55. During the course of over 40 years of practice, I have been the lead attorney, co-counsel and associate with skilled, knowledgeable and reputable civil rights attorneys such as John Burris, Senator John Edwards, John Scott, Howard Moore, Jr., Oliver Jones, Pamela Price and others. I was elected and served for 10 years on the Board of Directors of the California Trial Lawyers Association, (currently Consumers Attorneys California) and served on the legislative committee for civil rights and employment law. I am also a graduate of the Gerry Spence Trial Lawyers College located in Dubois, Wyoming.

56. I have been lead or co-counsel on numerous complex state and federal cases in California and across the country. Along with his partner, A. Cabral Bonner, I have been or am currently admitted pro hac vice in the following courts in employment, civil rights and personal injury cases: The United States District Court for the Northern District of New York (*Grant, et al v. City of Syracuse, et al.* Case No.: 5:15-CV-445; *Crawley v. City of Syracuse et al.* Case No. 5:17-cv-01389-DNH-TWD; *Boykins v. City of Syracuse et al.* Case No.: 5:18-cv-01378-LEK-TWD); The United States District Court for the Western District of New York (*Lawrence et al v. Village of Newark et al.* Case No. 6:19-cv-06233-EAW-MJP) The United States District Court for

the Central District Of Illinois Rock Island Division (*Bensenberg v FCA US LLC* Case No. 4:17-cv-04213-SLD-JEH); The United States District Court for the Sothern District of Alabama (*K. et al v. Mobile County Board of Education et al*. Case No. 1:18-cv-00343-TFM-N); The United States District Court for the Eastern District Of North Carolina (*Oates, et al v. Lolita Chapman et al.* Case No. 5:16-cv-00623-FL). Bonner & Bonner are also admitted in all the Federal District Courts in California, including the United States Courts of Appeals for the Ninth Circuit.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on this 26th day of October, 2022 in Sausalito, California.

/s/*Charles A. Bonner*
Charles A. Bonner
Attorney for Plaintiffs

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYVIEW HUNTERS POINT RESIDENTS, *et al.*, | Case No.  3:19-cv-01417-JD |
| Plaintiffs, | **SETTLEMENT AGREEMENT AND RELEASE** |
| v. | Hon. James Donato, Presiding |
| TETRA TECH EC, INC., *et al.*, | |
| Defendants. | |

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

This Settlement Agreement is entered into on this ___ day of November, 2022, between (a) on behalf of the Class, Class Representative Arieann Harrison, and (b) defendants Lennar Corporation and Five Point Holdings, LLC.

**I.     DEFINITIONS**

As used in this Settlement Agreement, the following terms have the following meanings:

1.     "Action" means the putative class action lawsuit entitled *Bayview Hunters Point Residents et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:19-cv-01417-JD, pending in the United States District Court for the Northern District of California.

2.     "Agreement," "Settlement," or "Settlement Agreement" mean this Settlement Agreement and Release and the settlement embodied in this Settlement Agreement and Release, including all attached exhibits.

3.     "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel, up to $1.4 million ($1,400,000), to be allocated towards plaintiffs' attorneys' fees, costs and expenses to compensate Class Counsel for their fees and expenses in connection with the Action and the Settlement.

4.     "Authorized Cash Claimant" means a Settlement Class Member who submitted a valid Cash Claim.

5.     "Cash Claim" means a claim for monetary reimbursement as described in Section III.D of this Agreement.

6.     "Claim Deadline" means the date by which a Settlement Class Member must submit a Claim Form, in accordance with the procedures set forth herein.

7.     "Claim Form" means the document to be submitted by Settlement Class Members seeking cash payment pursuant to this Agreement who are not listed on Amended Exhibit A, ECF Doc 154. The Claim Form will be available online at the Settlement Website (defined below) and the contents of the Claim Form will be approved by the Court, in language to be agreed to by the Settling Parties.

- 1 -

8.     "Claimant" means a Settlement Class Member who submits a claim for cash as described in Section III.D of this Agreement.

9.     "Class Counsel" means Charles A. Bonner and Adam Cabral Bonner of The Law Offices of Bonner & Bonner.

10.    "Class" or "Class Member" or "Settlement Class" means all current residents of Postal Zip Code 94124 and any individuals who previously resided in Postal Zip Code 94124 at any time between January 1, 2004 and the date on which this Settlement Agreement receives preliminary approval from the Court, as well as all parties named in Amended Exhibit A, ECF Doc 154. Excluded from the Class are those individuals whose claims against Developers have been released under the terms of the settlement agreement in *Pennington et al. v. Tetra Tech Inc., et al.*, Case No. 3:18-cv-05330 (N.D. Cal.), ECF Nos. 123-1, 224; the Judge presiding over this Action and members of the Court's staff; Developers, including Developers' subsidiaries, parent companies, successors, predecessors, and any entity in which Developers or its parents have a controlling interest and their current or former officers, directors, and employees; and Defense Counsel.

11.    "Class Notice" means the Short Form Notice to be sent to Class Members by the Settlement Administrator and the Detailed Notice to be published on the Settlement Website and sent upon request that discloses the terms of this Settlement. The Settling Parties will separately agree to the form of notices, which shall be submitted for Court approval in connection with plaintiffs' motion for preliminary approval of this Settlement.

12.    "Class Representative" means Arieann Harrison.

13.    "Complaints" mean, collectively, the initial, First Amended, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Complaints filed by plaintiffs on May 1, 2018, July 2, 2018, November 18, 2019, March 2, 2020, and April 30, 2021, respectively (S.F. Sup. Ct. Case No. CGC-18-566188, Dkt. Nos. 1, 3; N.D. Cal. Case No. 3:19-cv-01417-JD, Dkt. Nos. 1-1, 29, 43, and 114).

14.    "Court" means the United States District Court for the Northern District of California and the Judge assigned to this Action (the Honorable James Donato).

DocuSign Envelope ID: 42330A32-636F-4237-BAF2-7E558B5AC687

15. "Current Residents" means individuals who are currently residing in Postal Zip Code 94124.

16. "Defense Counsel" means the law firms of O'Melveny & Myers, LLP and Alston & Bird, LLP.

17. "Detailed Notice" means the notice to be published on the Settlement Website and mailed or emailed to Class Members upon request that discloses the terms of this Settlement Agreement, the contents of which the Settling Parties shall separately agree to. The Detailed Notice will be available in Spanish and English on the Settlement Website.

18. "Developers" or "Developer Defendants" means Lennar Corporation and Five Point Holdings, LLC.

19. "Effective Date of Settlement" means the first date after: (1) the Court enters the Final Order and Final Judgment, in substantially the same form as the Settling Parties shall separately agree to; and (2) all appellate rights with respect to said Final Order and Final Judgment have expired or been exhausted in such a manner as to affirm the Final Order and Final Judgment.

20. "Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (a) entering the Final Order and Final Judgment and dismissing this Action with prejudice; (b) determining whether the Settlement should be approved as fair, reasonable, and adequate; (c) determining whether, under California Code of Civil Procedure §§ 877 and 877.6, the settlement between the Settling Parties is in good faith; (d) ruling upon an application by Class Counsel for Attorneys' Fees and Expenses; and (e) entering any final order awarding Attorneys' Fees and Expenses.  The Settling Parties shall request that the Court schedule the Fairness Hearing for a date that complies with the provisions of 28 U.S.C. § 1715(d).

21. "Fee and Expense Award" means such funds as may be awarded by the Court to Class Counsel as compensation for the time, efforts and other costs and expenses accrued by Class Counsel in litigating this Action.

1        22.    "Fee and Expense Award Application" means Class Counsel's application for a

2  fee and expense award.

3        23.    "Final Order and Final Judgment" means the Court's order and judgment fully and

4  finally approving the Settlement Agreement and dismissing this Action with prejudice,

5  substantially in the form as the Settling Parties shall separately agree to.

6        24.    "Five Point" means Five Point Holdings, LLC.

7        25.    "Former Residents" means individuals who previously resided in Postal Zip Code

8  94124 at any time between January 1, 2004 and the date on which this Settlement Agreement

9  receives preliminary approval.

10        26.    "HPNS" means all property that has been, at any time, part of Hunters Point Naval

11  Shipyard, also known as "Hunters Point Annex," "HPA," "former HPNS," and/or "former

12  Hunters Point Naval Shipyard."

13        27.    "Lennar" means Lennar Corporation.

14        28.    "Mediators" means Hon. Daniel H. Weinstein (ret.) and Lizbeth Hasse, Esq.

15        29.    "Medical Monitoring Fund" means the commitment by Developers to allow Four

16  Hundred Thousand ($400,000.00) of the Settlement Fund to be deposited into an interest-bearing

17  trust fund to be administered by Class Counsel for medical monitoring and testing for the

18  Settlement Class Members, as described in Section III.C.3 below.

19        30.    "Named Plaintiffs" shall mean those individuals identified in Amended Exhibit A

20  at Dkt. No. 154 in this Action.

21        31.    "Notice Date" means the first date upon which the Class Notice is disseminated.

22  The Notice Date shall be no later than thirty (30) days after the entry of the Preliminary Approval

23  Order.

24        32.    "Opt-Out Form" means a paper or online form by which Class Members may

25  request exclusion from the Class.  The Settling Parties will separately agree to the content of the

26  Opt-Out Form, which shall be submitted for Court approval in connection with plaintiffs' motion

27  for preliminary approval of this Settlement.

28        33.    "Parcel A" shall mean those areas of land defined in Exhibit 1.

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

34.     "Postcard Notice" means the Short Form Notice to be mailed to Class Members by the Settlement Administrator as described in Section V.C below, the contents of which the Settling Parties shall separately agree to.

35.     "Preliminary Approval Hearing" means the hearing at or after which the Court will determine whether to preliminarily approve the Settlement and authorize dissemination of the Class Notice.

36.     "Preliminary Approval Order" shall mean the order preliminarily approving the Settlement and proposed Class Notice and notice plan, substantially in the form as the Settling Parties shall separately agree to.

37.     "Qualified Settlement Fund" shall have the meaning established by Treasury Regulation § 1.468B-1.

38.     "Release" shall mean the release and waiver set forth in Section V.H of this Settlement Agreement and in the Final Order and Final Judgment.

39.     "Released Claims" shall mean those claims released pursuant to Sections V.H of this Settlement Agreement and in the Final Order and Final Judgment.

40.     "Released Parties" shall include and mean:

     (i)     Developers and each of their subsidiaries, affiliates, and related corporations and entities (including without limitation HPS Development Co., L.P.; Lennar – BVHP, LLC; HPS1 Block 50 LLC; HPS1 Block 51 LLC; HPS1 Block 53 LLC; HPS1 Block 54 LLC; HPS1 Block 55/56 LLC; The Shipyard Communities, LLC; CP Development Co., LLC), and all of their respective officers, directors, owners, representatives, partners, members, managers, shareholders, affiliates, agents, heirs, guardians, executors, administrators, trustees, beneficiaries, successors, consultants, employees, assigns, and insurers; and

     (ii)     All of the Developers' past, present, and future subsidiaries, affiliates, and related corporations and entities (including without limitation HPS Development Co., L.P.; Lennar – BVHP, LLC; HPS1 Block 50 LLC; HPS1 Block 51 LLC; HPS1 Block 53 LLC; HPS1 Block 54 LLC; HPS1 Block 55/56 LLC; CP

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

Development Co., LLC; and The Shipyard Communities, LLC), and all of their respective officers, directors, owners, representatives, partners, members, managers, shareholders, affiliates, agents, successors, consultants, employees, assigns, heirs, guardians, executors, administrators, trustees, beneficiaries, and insurers.

Notwithstanding the aforementioned definition of "Released Parties," "Released Parties" does not include Tetra Tech, Inc., or any of Tetra Tech, Inc.'s subsidiaries or affiliates or any of their respective officers, directors, owners, representatives, partners, members, shareholders, managers, agents, heirs, guardians, executors, administrators, trustees, beneficiaries, successors, consultants, employees, assigns, and insurers, including but not limited to, Tetra Tech EC, Inc., Dan L. Patrick, Steven M. Burdick, Stephen C. Rolfe, and Justin E. Hubbard.

41.     "Releasing Parties" means Named Plaintiffs and all Settlement Class Members, on behalf of themselves and each of their family members, heirs, guardians, executors, administrators, lenders, insurers, trustees, beneficiaries, representatives, agents, attorneys, partners, successors, and assigns, as well as any other person or entity purporting to claim on their behalf.

42.     "Settlement Administration Expenses" means any and all sums charged, invoiced, or incurred by the Settlement Administrator with respect to this Settlement Agreement.

43.     "Settlement Administrator" means Kroll Settlement Administration or such other third party administrator as may be agreed to by the Settling Parties and approved by the Court to administer the Settlement, including providing the Class Notice pursuant to the terms and conditions of this Agreement.

44.     "Settlement Class Member(s)" means any member of the Class who does not elect exclusion or opt out from the Settlement Class pursuant to terms and conditions for exclusion set out in Section V.D.2 of this Settlement Agreement and the Class Notice.

45.     "Settlement Fund" means Five Million, Four Hundred Thousand Dollars ($5,400,000.00) that will be paid by or on behalf of the Released Parties, pursuant to the terms

- 6 -

and conditions of this Settlement Agreement, in consideration for the release of all claims as provided in this Settlement Agreement.

46.    "Settlement Fund Balance" means the remainder of the Settlement Fund after the Settlement Administration Expenses and Attorney's Fees and Expenses are deducted.

47.    "Settlement Share for Current Residents and Named Plaintiffs" means the amount of each Current Resident and Named Plaintiff Settlement Class Member's share of the Settlement Fund Balance pursuant to the terms and conditions of this Settlement Agreement.

48.    "Settlement Share for Former Residents" means the amount of each Former Resident Settlement Class Member's share of the Settlement Fund Balance pursuant to the terms and conditions of this Settlement Agreement.

49.    "Settling Parties" means the Class Representative on behalf of herself and the Settlement Class, and Developers.

50.    "Site Monitor" means Albion Partners or any successor charged with overseeing compliance with health and safety requirements for development work at Parcel A, as described in Section III.A below.

## II.    **RECITALS**

WHEREAS, plaintiffs filed in the Superior Court of California in and for the County of San Francisco a complaint against Tetra Tech, Inc., Tetra Tech EC, Inc., Lennar, and Five Point on May 1, 2018, asserting claims based on alleged unfair and fraudulent business practices, false and misleading statements, negligence, fear of cancer, strict liability for ultrahazardous activities, violation of California Proposition 65 (Health & Safety Code Section 25249.5, *et seq*.), fraud, negligence *per se*, bad faith breach of third party contract, injunctive relief, and punitive damages (*BayView Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.*, No. CGC-18-566188);

WHEREAS, the initial complaint primarily focused on alleged fraud committed by Tetra Tech, Inc. and Tetra Tech EC, Inc. (collectively, "Tetra Tech") in the investigation and remediation of HPNS, as disclosed by criminal plea agreements that were unsealed on May 2, 2018, which showed that Tetra Tech misrepresented to government agencies the level of contamination and the results of tests on HPNS parcels;

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

WHEREAS, the Complaint only asserted one cause of action against Lennar and Five Point, for injunctive relief, seeking to require Lennar and Five Point to stop all development until thorough, complete, and verified test results could be obtained showing that all of the toxins and radioactive materials had been removed from HPNS;

WHEREAS, on July 2, 2018, plaintiffs filed a first amended complaint, adding two new causes of action for public and private nuisance and adding additional Named Plaintiffs, for a total of 2102, but otherwise asserting against Lennar and Five Point largely identical allegations as the initial complaint;

WHEREAS, on February 5, 2019, plaintiffs filed a second amended complaint, again adding additional Named Plaintiffs, for a total of 2555, but otherwise asserting the same allegations and cause of action against Lennar and Five Point;

WHEREAS, on March 18, 2019, Tetra Tech EC, Inc. filed a notice of removal in the United States District Court for the Northern District of California (ECF No. 1);

WHEREAS, on April 17, 2019, the Court filed an order relating the Action to another pending suit in the Northern District of California, *Pennington v. Tetra Tech, Inc.*, Case No. 18-cv-05330-JD ("*Pennington*");

WHEREAS, on October 18, 2019, the Court denied remand of *Pennington* and this Action;

WHEREAS, on November 18, 2019, plaintiffs filed a third amended complaint, naming additional plaintiffs for a total of 3929, but otherwise asserting the same allegations against Lennar and Five Point;

WHEREAS, on March 2, 2020, plaintiffs filed a fourth amended complaint, adding causes of action for survival action and wrongful death as well as additional Named Plaintiffs, for a total of 7572, but otherwise asserting the same allegations against Lennar and Five Point;

WHEREAS, plaintiffs claim that on June 17, 2020 they learned that Lennar had commenced development efforts and was digging and excavating a section of Parcel A directly adjacent to a chain-link fence dividing the Shipyard from a school and residences along Kiska Road;

WHEREAS, in an effort to resolve plaintiffs' concerns regarding the development work at HPNS, Lennar and Five Point agreed in October 2020 to commence mediation efforts with plaintiffs under the supervision of mediators Hon. Daniel H. Weinstein (ret.) and Lizbeth Hasse, Esq.;

WHEREAS, on April 30, 2021, plaintiffs filed their fifth amended complaint, which included new substantive allegations as well as asserted new causes of action against Lennar and Five Point seeking damages for emotional distress arising from Lennar's development work at HPNS;

WHEREAS, on June 17, 2021, plaintiffs filed a Motion for An Order to Show Cause ("Show Cause Motion") against Lennar and Five Point to show why a temporary restraining order should not issue for their alleged failure to comply with Proposition 65 in conducting development work at HPNS;

WHEREAS, the Settling Parties jointly stipulated that Lennar and Five Point would have until December 1, 2021 to file a response to the Show Cause Motion;

WHEREAS, from October 2020 through November 23, 2021, the Settling Parties conducted arm's-length negotiations concerning a proposed class-wide settlement under the supervision of the Mediators and on November 23, 2021, the Settling Parties reached an agreement in principle to settle the Action, subject to approval of the Court;

WHEREAS, Class Counsel conducted a thorough investigation and evaluation of the facts and law related to the claims asserted to determine how best to serve the interests of the Named Plaintiffs and the Settlement Class, including a thorough review of thousands of pages of records released in connection with discovery in this Action and related proceedings and through consultation with environmental, medical, and economic consultants on the effect of Tetra Tech's activities on the Named Plaintiffs' health, fear of cancer, and other claimed damages;

WHEREAS, plaintiffs and their counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the claims through trial, appeal, and ancillary actions.  Plaintiffs, and their counsel, have also considered the uncertain outcome and risk of any litigation, as well as the difficulties and delay inherent in such litigation, and have

DocuSign Envelope ID: 42330A32-636F-4237-BAF2-7F558B5AC671

concluded that the settlement set forth in this Settlement Agreement confers substantial benefits upon the Class Members.  Plaintiffs, and their counsel, are also mindful of the inherent challenges of proof and that Lennar and Five Point may have compelling defenses to the alleged claims.  Based upon their evaluation, they have determined that the settlement set forth in this Settlement Agreement provides a just, fair, and favorable recovery for the Settlement Class, and is in the best interest of the Settlement Class;

WHEREAS, Lennar and Five Point have denied and continue to dispute all of the allegations and claims alleged in the Complaints, and deny any and all allegations of wrongdoing, fault, liability or damage of any kind to Named Plaintiffs and the putative class.  Lennar and Five Point further deny that Named Plaintiffs' claims are suitable for class action treatment outside of a class settlement context.  Lennar and Five Point desire to settle the Action upon the terms and conditions set forth in this Settlement Agreement solely to eliminate the uncertainties, burden, expense, and delay of further protracted litigation, arbitration, or other legal proceedings;

NOW THEREFORE IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties, subject to the approval of the Court, that the Action and the Released Claims shall be fully and finally compromised, settled, and released, and that the claims against the Released Parties shall be dismissed with prejudice subject to and upon the terms and conditions described below.

## III.   SETTLEMENT CONSIDERATION

In consideration of the Release provided for in Section V.H and the dismissal of the Action with prejudice, the Released Parties agree to provide the following consideration to the Class under the terms of this Settlement Agreement:

### A.   **Non-Monetary Consideration**

During the period of one year from the final settlement approval, or until the completion of site grading at Parcel A, whichever occurs first, Lennar shall cause the Site Monitor to provide its weekly site monitoring report on a confidential basis to the Mediators for a review of the process and protocols in place.  If the Mediators have questions about the process or protocols

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

LEGAL02/42266018v3

1    underlying the site monitoring report, a representative of Lennar and/or the party preparing the

2    site monitoring reports shall respond to such questions on a confidential basis.

3                    **B.**    **Monetary Consideration**

4         In consideration for the Release contained in this Settlement Agreement, and without

5    admitting liability for any of the alleged acts or omissions alleged in the Complaints, and in the

6    interest of minimizing the costs inherent in any litigation, the total sum of the Settlement Fund

7    (i.e., Five Million, Four Hundred Thousand Dollars and No Cents ($5,400,000.00)) will be paid

8    by or on behalf of the Released Parties.  Except for Developers' partial payment for Settlement

9    Administration Expenses and Mediation Costs as outlined in Sections III.C.5 and III.C.6, the

10   Parties agree that the Settlement Fund, and that payment, is the full extent of the Released Parties'

11   payment obligation under this Settlement Agreement.

12        The Released Parties' payment obligation shall be subject to a Preliminary Approval

13   Order, the Final Order and Final Judgment, and the Effective Date.  No later than thirty (30) days

14   after the Effective Date of Settlement, an amount equal to the Settlement Fund will be paid by or

15   on behalf of the Released Parties into an escrow bank account (the "Escrow Account"), to be

16   created and administered by the Settlement Administrator pursuant to the terms of this Settlement

17   Agreement.  The Escrow Account shall be held in a Qualified Settlement Fund in interest bearing

18   bank account deposits with commercial banks with excess capital exceeding One Hundred

19   Million Dollars ($100,000,000.00), with a rating of "A" or higher by S&P and insured by the

20   FDIC.  All funds in the Escrow Account shall be deemed to be in the custody of the Court and

21   shall remain subject to the jurisdiction of the Court until such time as the funds shall be

22   distributed or returned to the persons paying the same pursuant to this Settlement Agreement

23   and/or further order of the Court.  Interest earned on money in the Escrow Account, less any taxes

24   owed thereon (if any), will be added to the Settlement Fund for the benefit of the Class, unless the

25   terms of the Settlement Agreement are not completely fulfilled, in which case all funds in the

26   Escrow Account, including interest, shall be returned to the Released Parties' payor.

27

28

SETTLEMENT AGREEMENT
                                                      3:18-CV-05330-JD

### C.    Distribution of the Settlement Fund

Subject to the terms and conditions of this Settlement Agreement, the Settlement Fund shall be used for the payment of: (a) the Settlement Share for Current Residents and Named Plaintiffs; (b) the Settlement Share for Former Residents; (c) the Medical Monitoring Fund; (d) a portion of the Settlement Administration Expenses, as described below; and (e) the Attorneys' Fees and Expenses to Class Counsel approved by the Court.

### 1.    Settlement Share for Current Residents and Named Plaintiffs

Settlement Class Members who are Current Residents and/or Named Plaintiffs shall be eligible to receive a Settlement Share for Current Residents and Named Plaintiffs in accordance with the Claims Process Plan provided in Section III.D.  From the Settlement Fund, $3.5 million ($3,500,000.00) shall be set aside to pay the Settlement Share for Current Residents and Named Plaintiffs.  All Named Plaintiffs as well as Current Residents who submit valid claims will be entitled to receive a *pro rata* proportion of that amount, to be determined based on the number of valid claims submitted.  Should all Current Residents submit a valid claim, individual recovery is estimated to be approximately $100.  The Settling Parties will engage a settlement administrator to help estimate the actual payouts Class Members will receive based on projected take rates.  Notice to Class Members will indicate the anticipated range of the cash payment per valid claim.

### 2.    Settlement Share for Former Residents

Settlement Class Members who are Former Residents shall be eligible to receive a Settlement Share for Former Residents in accordance with the Claims Process Plan provided in Section III.D.  From the Settlement Fund, One Hundred Thousand Dollars ($100,000.00) shall be set aside to pay the Settlement Share for Former Residents.  Former Residents who submit valid claims will be entitled to receive a *pro rata* proportion of that amount, to be determined based on the number of valid claims submitted, with a maximum of One Hundred Dollars ($100) per claim. Should fewer than 1,000 Former Residents submit valid claims for payment, the remainder shall be added to the Settlement Share for Current Residents.

### 3.    Medical Monitoring Fund

Class Counsel shall allocate Four Hundred Thousand Dollars ($400,000.00) from the

1    Settlement Fund to be placed in the Medical Monitoring Fund, in accord with a protocol designed

2    by Class Counsel and their advisors, for a period of five (5) years, until resolution of the above-

3    referenced action against the Tetra Tech Defendants, or until the Medical Monitoring Fund is

4    exhausted, whichever occurs first.  If a balance remains in the Medical Monitoring Fund at the

5    time of any final settlement between plaintiffs and Tetra Tech, the contents thereof shall be

6    distributed on a pro rata basis to the Settlement Class Members who are Current Residents or to

7    an appropriate *cy pres* recipient, subject to the Court's approval.  The Settling Parties shall agree

8    on and then submit the protocol for administration of the Medical Monitoring Fund for Court

9    approval in connection with plaintiffs' motion for preliminary approval of this Settlement.

10   **4.      Attorneys' Fees and Expenses**

11          Class Counsel shall file an application for Attorney's Fees and Expenses (which may be

12   part of plaintiff's Motion for Final Approval) approximately fourteen (14) days prior to the date

13   set forth in the Preliminary Approval Order as the deadline for the objections.  Class Counsel may

14   seek up to One Million Four Hundred Thousand Dollars ($1,400,000) from the Settlement Fund

15   in Attorneys' Fees and Expenses.  The allocation of this amount shall be left to Class Counsel's

16   discretion.  Under no circumstances will Developers be required to pay more than $1,400,000 for

17   Attorneys' Fees and Expenses; however, this limitation does not include the contributions made

18   by Developers set forth in Sections III.C.5 and III.C.6, herein.  Should the Court approve an

19   award of Attorneys' Fees and Expenses less than $1,400,000, the balance of funds shall be added

20   to the amount to be paid to the Settlement Share for Current Residents and Named Plaintiffs.

21   **5.      Settlement Administration Expenses**

22          Separate from the Settlement Fund, Developers shall make an initial payment of Fifty

23   Thousand Dollars ($50,000) towards expenses for notice and administration of this Settlement

24   within fifteen (15) days after the Court enters the Preliminary Approval Order.  If settlement

25   administration expenses exceed $50,000, Class Counsel shall allocate up to Eighty Thousand

26   Dollars ($80,000) from the Settlement Fund to the total costs of notice and administration, to be

27   taken proportionately from the portion of the Settlement Fund allocated to pay the Settlement

28   Share for Current Residents and the Settlement Share for Former Residents.  Any settlement

administration expenses in excess of One Hundred Thirty Thousand Dollars ($130,000) shall be paid from the portion of the Settlement Fund which the Court allocates for Attorneys' Fees and Expenses.

**6.     Mediation Expenses**

Separate from the Settlement Fund, Developers shall pay up to Fifty Thousand Dollars ($50,000) towards the combined cost of the mediation for the Settling Parties, with any invoice balance to be split evenly by the Settling Parties.

**D.     <u>Claims Process Plan</u>**

Each Settlement Class Member who is not a Named Plaintiff shall be required to submit a valid Claim Form to receive payment, consistent with this Section III.D.  The Settlement Administrator shall only approve claims for Class Members whose current or former residence was in Postal Zip Code 94124 between January 1, 2004 and the date on which this Settlement Agreement receives preliminary approval and can be verified, as well as all Named Plaintiffs.

**1.     Claim Form**

Claimants shall have the option of (i) completing and submitting a Claim Form entirely online (without the need to print and scan or upload a Claim Form), (ii) printing a Claim Form online which they may complete and submit by mail, or (iii) requesting that a Claim Form be mailed to them by the Settlement Administrator, which they may complete and submit through the mail.  The Claim Form shall require each claimant to submit evidence of residency and sign under penalty of perjury that he or she resided in Postal Zip Code 94124 between January 1, 2004 and the date on which this Settlement Agreement receives preliminary approval and otherwise meets the definition for Class Members.  All claims shall be subject to review by the Settlement Administrator.  The Settling Parties shall separately agree on the contents of the Claim Form, which will then be attached to plaintiffs' motion for preliminary approval of this Settlement and approved by the Court.

**2.     Claim Deadline**

To be valid, all Claim Forms must be submitted to the Settlement Administrator (or postmarked, if submitting via mail) by no later than ninety (90) days after the initial distribution

of the Notice as set forth in Section V.C below.

**3.     Claim Payments**

The amount payable to each Settlement Class Member shall be determined by the Settlement Administrator once all timely submitted claims have been received and validated, at which time the Settlement Administrator will promptly provide the Settling Parties with a final report detailing the number and amount of all Cash Claims to be made.  Within thirty (30) days after the Effective Date, the Settlement Administrator shall issue payment directly to Named Plaintiffs and Settlement Class Members who submitted valid Cash Claims from the Settlement Fund, via check or other payment method.  Checks issued under this Settlement shall be valid for one-hundred and eighty (180) days after the date of issuance.  After one-hundred and eighty (180) days, checks that have not been cashed shall be void.  Any unused funds resulting from voided checks, or uncollected funds, shall be distributed on a pro rata basis to the Settlement Class Members who are Current Residents or to an appropriate *cy pres* recipient, subject to the Court's approval.

**4.     Deficient Claims**

Prior to rejection of a Claim Form, the Settlement Administrator shall communicate with the Claimant in an effort to remedy curable deficiencies in the Claim Form submitted, except in instances where the Claim is untimely, clearly fraudulent (e.g., a Claim submitted by "John Doe"), or clearly uncurable (e.g., the Claim Form discloses that the Claimant did not reside in Postal Zip Code 94124 during the Class Period).  Untimely and clearly fraudulent or uncurable Claims shall be rejected without cure attempt.

**5.     Manner of Communicating Deficiency**

Within thirty (15) days after the Claim Deadline, the Settlement Administrator shall email all Class Members whose Claims were denied stating the reason for the denial, at the email address (if any) provided by the Class Member on the Claim Form.  If no email address is provided by the Class Member on the Claim Form, the Settlement Administrator shall not have an obligation to provide the Class Member with any notification of the reasons for denial of the Claim.  The Settlement Administrator's determination of whether a Claim is a Valid Claim, if not

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

disputed by the Settling Parties, shall be final and not subject to further review.

## IV.  CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

Solely for the purposes of the settlement of this Action, the Settling Parties agree to the certification of a Settlement Class of all current or former residents of Bayview Hunters Point, including individuals who previously resided in the Bayview Hunters Point community, Postal Zip Code 94124 from 2004 to present, as well as all people named in Amended Exhibit A, ECF Doc 154.  Plaintiffs shall make this request for certification to the Court, and Class Counsel shall request the Court to enter an order, which, among other things, certifies the Class for settlement purposes, as set forth in this paragraph.  The Released Parties contend that certification of the alleged class (other than on a settlement basis) would not be possible absent this settlement because individual issues would predominate.

In the event this Settlement Agreement and the settlement provided for herein is not finally approved, or is terminated, canceled, or fails to become effective for any reason whatsoever, this class certification, to which the Settling Parties have stipulated solely for the purpose of the settlement of this Action, shall be null and void and the Settling Parties will revert to their respective positions immediately prior to the execution of this Settlement Agreement. Under no circumstances may this Settlement Agreement be used as an admission or as evidence concerning the appropriateness of class certification in these or any other actions against the Released Parties.

## V.  SETTLEMENT APPROVAL PROCESS

### A.  Preliminary Approval of Settlement

Promptly after execution of this Settlement Agreement, Class Counsel shall present this Settlement Agreement to the Court, along with a motion requesting that the Court issue a Preliminary Approval Order substantially in the form as the Settling Parties shall separately agree to, which shall include, among other things:

1.  Preliminary approval of the settlement memorialized in this Settlement Agreement as fair, reasonable, and adequate;

- 16 -

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

2.  Approval of the Class Notice containing language to be agreed by the Settling Parties for distribution to Settlement Class Members;

3.  A direction to the Settlement Administrator to disseminate the Class Notice in the form approved by the Court to Settlement Class Members;

4.  A direction that each potential Settlement Class Member who wishes to be excluded from the Settlement Class must respond to the Class Notice in writing in accordance with the instructions set forth in the Class Notice and that their responses must be received by the date set forth in the Preliminary Approval Order;

5.  A finding that the Class Notice constitutes the best practicable notice under the circumstances, including individual notice to all Settlement Class Members who can be identified with reasonable effort, and constitutes valid, due, and sufficient notice to Settlement Class Members in full compliance with the requirements of applicable law, including the due process clause of the United States Constitution;

6.  A direction that, pending final determination of the joint application for approval of this Settlement Agreement, all proceedings in this Action with respect to Lennar and Five Point other than settlement approval proceedings shall be stayed and all Settlement Class Members shall be enjoined from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any court or before any tribunal to the extent barred by the Released Claims;

7.  A direction that any Settlement Class Member who has not properly and timely requested exclusion from the Settlement Class will be bound by the Final Order and Final Judgment;

8.  The scheduling of a final hearing to determine whether this Settlement Agreement should be approved as fair, reasonable, and adequate and whether the proposed Final Order and Final Judgment should be entered (the Fairness Hearing);

9.  A direction that the Settlement Administrator shall tabulate communications from prospective Settlement Class Members asking to be excluded from the Settlement Class and shall report the names and addresses of such entities and natural persons to the Court and to Class Counsel no less than seven days before the Fairness Hearing;

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

10. A direction that the Settling Parties shall file a motion for determination, pursuant to California Code of Civil Procedure §877 and 877.6, whether the settlement between the Settling Parties is made in good faith;

11. A direction that Class Counsel shall file an application for Attorney's Fees and Expenses (which may be part of Plaintiff's Motion for Final Approval) approximately fourteen days prior to the date set forth in the Preliminary Approval Order as the deadline for the objections; that Class Counsel shall file any supplemental brief in support of final approval of the Settlement Agreement no later than seven days prior to the Fairness Hearing; and that the Court shall determine at the Fairness Hearing in what amount Attorneys' Fees and Expenses should be awarded to Class Counsel pursuant to the terms of the Settlement Agreement;

12. A direction that any Settlement Class Member who wishes to object to the proposed Settlement Agreement, the proposed Final Order and Judgment or the application by Class Counsel for Attorney's Fees and Expenses must file and serve such objections no later than the date set forth in the Preliminary Approval Order, which shall be approximately one (1) month before the Fairness Hearing, together with copies of all papers in support of his or her position as provided in Section V.D.1 of the Settlement Agreement. The Class Notice shall state that the Court will not consider the objections of any Settlement Class Member who has not properly served copies of his or her objections on a timely basis or complied with the requirements of Section V.D.1 of the Settlement Agreement.

**B.**    **Notice to Attorneys General**

In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, within ten days after the motion for Preliminary Approval Order is filed, the Settlement Administrator shall provide notice of this proposed Settlement to the Attorney General of the United States, and to the attorneys general of each state or territory in which a Settlement Class Member resides. The notice shall be prepared by Lennar and Five Point and will include (1) a copy of the Complaints, (2) a copy of this Settlement Agreement and its exhibits, and (3) a reasonable estimate of the number of Settlement Class Members in each

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

state/territory and their percentage representation in the Settlement Class. Lennar and Five Point will provide copies of such notifications to Class Counsel at the time of their submission to the attorneys general.

### C.   Notice to Settlement Class Members

Lennar and Five Point will direct the Settlement Administrator to send via first class mail the Short Form Notice (the contents of which the Settling Parties shall separately agree to) to the addresses of all current residents in the Bayview Hunters Point community, Postal Zip Code 94124. The Settlement Administrator will provide additional notice to Class Members via electronic means, including via publication notice as described in the declaration to be prepared by the Settlement Administrator and filed in connection with plaintiffs' motion for preliminary approval of this Settlement. The Settling Parties agree to cooperate in good faith to make reasonable efforts to locate class members for whom notice is returned as undeliverable. The Settlement Administrator will promptly log each Class Notice that is returned as undeliverable and provide copies of the log to Class Counsel.

### D.   Response to Notice

#### 1.   Objection to Settlement

Any Settlement Class Member who intends to object to the fairness of the Settlement Agreement must, by the date specified in the Preliminary Approval Order and recited in the Class Notice, file any such objection with the Court, and provide copies of the objection to: (1) Class Counsel: Charles A. Bonner of The Law Offices of Bonner & Bonner, 475 Gate Five Rd., Suite 211, Sausalito, CA 94965; and (2) Defense Counsel: David Marroso, O'Melveny & Myers LLP, 1999 Avenue of the Stars, 8th Floor, Los Angeles, CA 90067. Copies of any objection received at the addresses listed above shall thereafter promptly be provided to all other Class Counsel and Defense Counsel by the Settling Party receiving such objection.

Any objection to the Settlement Agreement must be individually and personally signed by the Settlement Class Member submitting it (if the Settlement Class Member is represented by counsel, the objection must also be signed by such counsel), and must include:

a.  The objecting Settlement Class Member's full name, address, and email and telephone number;

b.  A written statement describing with particularity all grounds for the objection, accompanied by any factual or legal support for the objection;

c.  Copies of any papers, briefs, or other documents upon which the objection is based;

d.  The name, address, email address, and telephone number of any attorney(s) representing the objector; and

e.  A statement indicating whether the objector and/or his or her counsel intends to appear at the Fairness Hearing and, if so, a list of all persons, if any, who will be called to testify in support of the objection.

Any Settlement Class Member who does not file a timely written objection to the Settlement Agreement and notice of his or her intent/non-intent to appear at the Fairness Hearing, or who otherwise fails to comply with the requirements of this section shall be foreclosed from seeking any adjudication or review of the Settlement Agreement by appeal or otherwise.

2.     **Requests for Exclusion**

Any Settlement Class Member who wishes to be excluded from the Settlement Class must submit a request for exclusion ("Request for Exclusion") to the Settlement Administrator at the address specified in the Class Notice by the date specified in the Preliminary Approval Order and recited in the Class Notice.  To be effective, the Request for Exclusion must be sent via first-class U.S. mail to the specified address and:

a.  Include the Settlement Class Member's full name, address, and email and telephone number;

b.  Explicitly state his or her desire to be excluded from the Settlement Class in *BayView Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.*; and

c.  Be signed by the Settlement Class Member.

Any Settlement Class Member who fails to submit a timely and complete Request for Exclusion sent to the proper address shall be subject to and bound by this Settlement Agreement and every

1   order or judgment entered pursuant to this Settlement Agreement. Any purported Request for

2   Exclusion or other communication sent to such address that is unclear or internally inconsistent

3   with respect to the Settlement Class Member's desire to be excluded from the Settlement Class

4   will be deemed invalid unless determined otherwise by the Court.

5       The Settlement Administrator will receive purported Requests for Exclusion and will

6   follow guidelines developed jointly by Class Counsel and Lennar and Five Point's counsel for

7   determining in the first instance whether they meet the requirements of a Request for Exclusion.

8   Any communications from Settlement Class Members (whether styled as an exclusion request, an

9   objection, or a comment) as to which it is not readily apparent that the Settlement Class Member

10  meant to exclude himself or herself from the Class will be evaluated jointly by Class Counsel and

11  Lennar and Five Point's counsel, who will make a good faith evaluation, if possible, of the

12  Settlement Class Member's intentions. Any uncertainties remaining about whether a Settlement

13  Class Member is requesting exclusion from the Settlement Class will ultimately be resolved by

14  the Court.

15      The Settlement Administrator will maintain a list of all Requests for Exclusion. The

16  Settlement Administrator shall report the names and addresses of all such persons requesting

17  exclusion to the Court and Class Counsel seven (7) days prior to the Final Hearing, and the list of

18  persons deemed by the Court to have excluded themselves from the Settlement Class will be

19  attached as an exhibit to the Final Order and Judgment.

20      **E.      Expenses of Persons Objecting to the Settlement**

21      Neither the Released Parties, nor the Settlement Class, shall be responsible for fees, costs,

22  or expenses related to any Class Members who submit objections to the Settlement Agreement or

23  related to any appeal by an objector arising from this Action for attorneys' fees, costs, or

24  expenses of any kind.

25      **F.      Fairness Hearing and Good-Faith Settlement Determination**

26      On the date set forth in the Preliminary Approval Order, a Fairness Hearing will be held at

27  which the Court will hear argument and consider: (1) whether to approve the Settlement

28  Agreement as fair, reasonable, and adequate; (2) whether to find, under California Code of Civil

Procedure § 877 and 877.6, that the settlement between the Settling Parties is in good faith; and (3) whether to approve Class Counsel's application for Attorney's Fees and Expenses. The Settling Parties will request that the Court hold the Fairness Hearing approximately one month after the deadline for submitting objections and Requests for Exclusion.

**G.**     **Final Order and Judgment**

If this Settlement Agreement is finally approved by the Court, a Final Order and Final Judgment directing the entry of judgment pursuant to Fed. R. Civ. P. 54(b) shall be entered substantially in the form as the Settling Parties shall separately agree to, as follows:

1.  Approving the Settlement Agreement as fair, reasonable, and adequate as it applies to the Settlement Class;

2.  Declaring that the Settlement Agreement was made in good faith between the Settling Parties, pursuant to California Code of Civil Procedure § 877 and 877.6;

3.  Declaring the Settlement Agreement to be binding on the Releasing Parties and the Released Parties;

4.  Dismissing with prejudice this Action, as to the Released Parties;

5.  Forever discharging the Released Parties from all Released Claims;

6.  Indicating the amount of Attorneys' Fees and Expenses to be awarded to Class Counsel and to be paid from the Settlement Fund; and

7.  Providing that all Settlement Class Members who did not request exclusion from the Settlement Class be permanently enjoined from commencing or prosecuting any action, suit, proceeding, claim, or cause of action asserting the Released Claims in any court or before any tribunal.

**H.**     **Release of Settlement Class Members' Claims**

Upon entry of the Final Order and Judgment, the Releasing Parties and their representatives, agents, heirs, successors, and assigns shall dismiss with prejudice all claims and causes of action against the Released Parties in this Action. This Settlement Agreement does NOT release Tetra Tech, Inc. or Tetra Tech EC, Inc. or any of their respective subsidiaries, successors and assigns.

- 22 -

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

1   Upon entry of the Final Order and Judgment, the Releasing Parties hereby release the

2   Released Parties from and against any and all claims, causes of action, omissions, representations,

3   obligations, demands, injuries, damages, losses, diminution in value, liabilities, costs, expenses,

4   and fees (including, without limitation, attorneys' fees, costs and expenses), known or unknown,

5   suspected or unsuspected, alleged or unalleged, asserted or unasserted arising out of or in any way

6   relating to the matters asserted or alleged, or which could have been asserted or alleged, in this

7   Action, including without limitation personal injury claims, negligence and nuisance claims, strict

8   liability claims, claims for injunctive relief or general, specific, and punitive damages relating to

9   the development of any portion of HPNS and California Proposition 65 claims, to the maximum

10  extent allowed by law.

11  Each of the Releasing Parties hereby waives any and all rights and benefits arising out of

12  the facts alleged in this Action by virtue of the provisions of California Civil Code § 1542, or any

13  other provision in the laws of the United States, or any state or territory of the United States, or

14  principle of common law or equity that is similar, comparable or equivalent to Civil Code § 1542,

15  with respect to this release.  The Releasing Parties are aware that Civil Code § 1542 provides as

16  follows:

17  **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE
    CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT**

18  **TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
    THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD**

19  **HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH**

20  **THE DEBTOR OR RELEASED PARTY.**

21  The Releasing Parties acknowledge that they may later discover facts in addition

22  to or different from those that they now know or believe to be true concerning the subject

23  matter of the Released Claims, but nevertheless fully, finally, and forever settle and

24  release any and all Released Claims, known or unknown, suspected or unsuspected,

25  contingent or non-contingent, which now exist, may later exist, or heretofore have existed

26  regarding the subject matter of the Released Claims, without regard to subsequent

27  discovery or existence of such different or additional facts concerning each of the

28  Released Parties.

- 23 -

## VI.    MISCELLANEOUS PROVISIONS

### A.    <u>Governing Law</u>

The interpretation and construction of this Settlement Agreement shall be governed by the laws of the State of California.

### B.    <u>No Admission</u>

This Settlement Agreement is for settlement purposes only.  Neither the fact of, nor any provision contained in this Settlement Agreement, nor any action taken under it, shall constitute, or be construed as, any admission of the validity of any claim or any fact alleged in this Action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of the Released Parties or any admission by the Released Parties of any claim, assertion or allegation made in any action or proceeding against the Released Parties.  This Settlement Agreement shall not be offered or be admissible in evidence against the Released Parties or the Releasing Parties, except in an action or proceeding brought to enforce its terms.

### C.    <u>Limit on Exclusion Requests</u>

The Released Parties have the option to withdraw from the settlement set forth in this Settlement Agreement if the number of Settlement Class Members that elect exclusion from the Settlement Class exceeds the number agreed upon in a separate, confidential Supplemental Agreement regarding Requests for Exclusion.  In the event of withdrawal from this Settlement Agreement pursuant to the terms of the Supplemental Agreement, this Settlement Agreement shall be cancelled and terminated and any class certification herein shall become void and have no further force and effect, and this Settlement Agreement may not be used as an admission or as evidence concerning the appropriateness of class certification, as a defense to arbitration, or for any other reason, in these or any other actions against the Released Parties.

### D.    <u>Good Faith Settlement Determination</u>

The Settling Parties agree that a determination by the Court, under California Code of Civil Procedure § 877 and 877.6, that this settlement is made in good faith and therefore future contribution claims are barred, is a material and essential term and condition of this Settlement Agreement.  If for any reason the Court refuses to make a determination that this Settlement

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

Agreement was made in good faith, pursuant to California Code of Civil Procedure §§ 877 and 877.6, at the sole election of and upon written notice to Class Counsel from the Released Parties given within fourteen (14) days of any such refusal by the Court, this Settlement Agreement shall be rendered null and void and this Action will return to the status quo as it existed prior to the Settling Parties seeking approval of the Settlement Agreement.

### E.  No Assignment of Claims

The Releasing Parties hereby represent and warrant that they have not heretofore assigned, transferred, pledged, sold, or otherwise encumbered or conveyed to any person or entity any claim that is the subject of this Settlement Agreement or any part or portion thereof.

### F.  Entire Agreement

This Settlement Agreement represents the entire agreement and understanding among the Settling Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Settlement Agreement.  The Settling Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement. No modification or waiver of any provisions of this Settlement Agreement shall in any event be effective unless the same shall be in writing and signed by the person against whom enforcement of the Settlement Agreement is sought.

### G.  Counterparts

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any party who has signed it, and all of which shall be deemed a single agreement.

### H.  Arm's-Length Negotiations

The Settling Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length and with the assistance of an experienced, neutral mediator from JAMS.  All terms, conditions, and exhibits in their exact form are material and necessary to this Settlement Agreement and have been relied upon by the Settling Parties in entering into this

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

DocuSign Envelope ID: 42330A32-636F-4237-BAF2-7E558E5AC671

Settlement Agreement.  The Settling Parties have all participated in the drafting of this agreement and it is not to be construed in favor of or against any of the Settling Parties.

### I.     Dispute Resolution

Any dispute, challenge, question, or the like relating to this Settlement Agreement (other than those which this Settlement Agreement provides shall be resolved otherwise) shall be heard by the Mediators in the first instance.  If the Mediators are unable to resolve the dispute, challenge, question, or the like, any further resolution will be made only by the Court.

### J.     Continuing Jurisdiction

The Court shall retain continuing and exclusive jurisdiction over the Settling Parties to this Settlement Agreement, including all Settlement Class Members, for the purpose of the administration and enforcement of this Settlement Agreement.

### K.     Binding Effect of Settlement Agreement

This Settlement Agreement shall be binding upon and inure to the benefit of the Settling Parties, Settlement Class Members, and their representatives, heirs, successors, and assigns.

### L.     Nullification

In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect other provisions only if the Released Parties and Class Counsel mutually elect to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement.

### M.     Extensions of Time

The Settling Parties may agree in writing upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice (subject to Court approval for any extensions of Court dates).

### N.     Service or Notice

Whenever, under the terms of this Settlement Agreement, a person is required to provide service or written notice to the Released Parties or Class Counsel, such service or notice shall be

LEGAL02/42266018v3

1   directed to the individuals and addresses specified below via overnight mail delivery, unless those

2   individuals or their successors give notice to the other Settling Parties in writing.

3

4       <u>For plaintiffs:</u>

5                 Charles A. Bonner
              The Law Offices of Bonner & Bonner

6                 475 Gate Five Rd., Suite 212
              Sausalito, CA 94965

7

8       <u>For Lennar:</u>

9                 David Marroso
              O'Melveny & Myers, LLP

10                1999 Avenue of the Stars, 8th Floor
              Los Angeles, CA 90067

11

12      <u>For Five Point:</u>

13                Jeffrey Dintzer
              Alston & Bird, LLP

14                333 S. Hope Street, Suite 1600
              Los Angeles, California 90071

15

16  The Law Offices of Bonner & Bonner shall promptly forward to Defense Counsel any service or

17  written notice provided under this provision to Mr. Bonner.   O'Melveny & Myers LLP and

18  Alston & Bird, LLP shall promptly forward to Class Counsel any service or written notice

19  provided under this provision to Mr. Marroso and Mr. Dintzer.

20      **O.**    **<u>Authority to Execute Settlement Agreement</u>**

21      Each counsel or other person executing this Settlement Agreement or any of its exhibits

22  on behalf of any party hereto warrants that such person has the authority to do so.

23      **P.**    **<u>Fees and Costs</u>**

24

25      Except as otherwise provided in this agreement, each side shall bear its or their own fees

26  and costs in connection with this Action and this Settlement Agreement.

27              *     *     *     *     *     *

28

SETTLEMENT AGREEMENT
3:18-CV-05330-JD

1

2

3      IN WITNESS HEREOF, the Settling Parties have caused this Settlement Agreement to be

4   executed by their duly authorized representatives, as of November __, 2022.

5

6

7

8   **<u>ON BEHALF OF THE LENNAR AND FIVE POINT DEFENDANTS</u>**

9

10                                          _____

11                                          JONATHAN M. JAFFE
                                            LENNAR CORPORATION
12

13

14                                          _____
                                            MICHAEL ALVARADO
15                                          FIVE POINT HOLDINGS, LLC

16   **<u>ON BEHALF OF SETTLEMENT CLASS</u>**

17

18                                          _____

19                                          ARIEANN HARRISON

20

21

22

23

24

25

26

27

28

- 28 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN WITNESS HEREOF, the Settling Parties have caused this Settlement Agreement to be executed by their duly authorized representatives, as of November 3, 2022.


**ON BEHALF OF THE LENNAR AND FIVE POINT DEFENDANTS**


_____
JONATHAN M. JAFFE
LENNAR CORPORATION


_____
MICHAEL ALVARADO
FIVE POINT HOLDINGS, LLC


**ON BEHALF OF SETTLEMENT CLASS**

_____
ARIEANN HARRISON

- 28 -

LEGAL02/42266018v3

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**If you are a current or former resident of BayView Hunters Point, you could be entitled to benefits under a class action settlement.**

*The United States District Court for the Northern District of California authorized this notice. This is not a solicitation from a lawyer.*

- This Long Form Notice summarizes the terms of a proposed Class Action Settlement in the lawsuit *BayView Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.*, Case No. 3:19-cv-01417-JD, pending in the District Court for the Northern District of California. Under the proposed settlement, companies involved with the development of the Shipyards in San Francisco (Lennar Corporation and Five Point Holdings LLC, or "Developers") will pay $5,400,000 to settle claims related to construction activity at the former Hunters Point Naval Shipyard and allegedly inadequate environmental disclosures to the BayView Hunters Point community.

- You may be a Class Member and may be entitled to participate in the proposed Settlement if you currently live in Postal Zip Code 94124 or if you previously lived in Postal Zip Code 94124 at any time between January 1, 2004 and [date] or if you are named in Amended Exhibit A to Plaintiffs' Fifth Amended Complaint. (ECF Doc 154). All eligible Settlement Class Members will receive an award upon submitting a valid claim. For more information, you can visit the settlement website at [SETTLEMENT WEBSITE].

- If the Court gives final approval to the Settlement, Developers will provide payments to each Class Member who properly and timely completes and submits a Claim Form. The value of a Class Member's award depends in part upon the number of persons who participate in the Settlement and will differ depending on whether the Class Member is a current or former resident of Postal Zip Code 94124.

- Your legal rights are affected whether you act or do not act. Please read this notice carefully. You can also visit: [Settlement Website] or call [Settlement Number] if you have any questions.

| OPTION | EXPLANATION | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to get an award under the Settlement. Visit the Settlement Website located at www.[____].com to obtain a Claim Form. If you submit a Claim Form, you will give up the right to sue Developers in a separate lawsuit about the claims this Settlement resolves. | [Month, Day, Year] |
| **EXCLUDE YOURSELF** | Get no payment under the Settlement. This is the only option that allows you to be a part of any other lawsuit against Lennar, Five Point, or their affiliates regarding their development work at Hunters Point Shipyard. | [Month, Day, Year] |

| OBJECT TO THE SETTLEMENT | Write to the Court about why you don't like the Settlement. | [Month, Day, Year] |
|---|---|---|
| OBJECT TO ATTORNEY'S FEES AND/OR EXPENSES | Write to the Court about why you don't like the attorneys' fees and/or expenses that Class Counsel requests. | [Month, Day, Year] |
| GO TO A HEARING | Ask to speak in Court about the fairness of the Settlement. | [Month, Day, Year] |
| DO NOTHING | You will not receive a Settlement award under the Settlement. You will also give up your right to object to the Settlement and you will not be able to be part of any other lawsuit about the legal claims in this case. | N/A |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still must decide whether to approve the settlement. Settlement payments will be made only if the Court approves the settlement and after any appeals are resolved. Please be patient.

## BASIC INFORMATION

### 1. Why did I get a notice?

If you received a Postcard Notice of the settlement, public records show that you currently reside in Postal Zip Code 94124.

The Court ordered this notice because you have a right to know about a proposed settlement of a class action lawsuit against the Developers relating to their construction activity at the former Hunters Point Naval Shipyard and allegedly inadequate environmental disclosures to the BayView Hunters Point community. You have a right to know about your options before the Court decides whether to approve the settlement. If the Court approves the settlement and after any appeals are resolved, an administrator will make the payments that the settlement allows.

This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *BayView Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.*, Case No. 3:19-cv-01417-JD. The people who sued are Plaintiffs, and the companies they sued, the Developers, are the Defendants.

### 2. What is this lawsuit about?

In a consolidated class action lawsuit pending against the Developers and Tetra Tech, the company hired by the Navy to clean up Hunters Point Naval Shipyard, Plaintiffs claim, among other things, that the Developers knew that employees of Tetra Tech had lied about the true levels of contamination. Plaintiffs claim that the Developers should have ceased all development activity and failed to provide required notice under California's Proposition 65 to residents of BayView Hunters Point about the potential health effects of their construction activity. Developers deny any wrongdoing, deny they were aware of Tetra Tech's misconduct before Plaintiffs, and deny that they failed to provide any notice required under California's Proposition 65. Plaintiffs also assert claims against Tetra Tech for its alleged misconduct in the cleanup. This settlement will not affect those claims against Tetra Tech, which Plaintiffs may continue to pursue.

## 3. Why is this a class action?

In a class action, one or more people, called Named Plaintiffs, sue on behalf of all people who purportedly have similar claims (called "Settlement Class Members"). Together, the Named Plaintiffs and the other Settlement Class Members make up the "Settlement Class." One court resolves the dispute for the Settlement Class, except for those who exclude themselves from the Settlement Class. United States District Court Judge James Donato, in San Francisco, is the judge overseeing this class action.

## 4. Why is there a settlement?

The Court did not decide the case in favor of Plaintiffs or the Developers. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and settlement benefits go to the Settlement Class Members. The Named Plaintiffs and their attorneys ("Class Counsel") think the settlement is in the best interests of the Settlement Class Members.

## WHO IS IN THE SETTLEMENT

To see if you are eligible for benefits, you first must determine whether you are a member of the Settlement Class.

## 5. Who are the Settlement Class Members?

**Current residents**: Any person who currently resides in Postal Zip Code 94124, as well as all individuals named in Amended Exhibit A, ECF Doc. 154 (a copy of which can be found at [WEBSITE LINK]).

**Former residents**: Any person who previously resided in Postal Zip Code 94124 at any time between January 1, 2004 and the date on which this Settlement Agreement receives preliminary approval from the Court.

## 6. Are there exceptions to being included?

The Settlement Class *excludes* the individuals whose claims against Developers have been released under the terms of the settlement agreement in *Pennington et al. v. Tetra Tech Inc., et al.*, Case No. 3:18-cv-05330 (N.D. Cal.), ECF Nos. 123-1, 224.  The Settlement Class also excludes Developers and Developers' subsidiaries, parent companies, successors, predecessors, and any entity in which Developers or its parents have a controlling interest, as well as the current or former officers, directors, and employees of those

entities.  The Settlement Class also excludes Defense Counsel. Finally, the Settlement Class excludes the judge, his staff, and his immediate family members.

### 7. I'm still not sure if I am included.

For further information, you can visit the Settlement Website at [WEBSITE], or call or write to Class Counsel, at the phone numbers or addresses listed below.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

### 8. What does the settlement provide?

The Developers will pay five million four hundred thousand dollars ($5,400,000.00) to establish the Settlement Fund. Of that amount, $3,600,000 will be allocated to payments to eligible Settlement Class Members. An additional $400,000 will be allocated to a medical monitoring fund for eligible Settlement Class Members.  Attorneys' fees and costs will be no more than $1,400,000.

**Amount of Cash Payment**: The cash payment per eligible Settlement Class Member ("Settlement Share") differs depending on whether or not the Settlement Class Member is a current or former resident of Postal Zip Code 94124.

Current residents of Postal Zip Code 94124 will be paid *pro rata* from a total fund of $3,500,000, and the amount each class member will receive will depend on the number of valid claims submitted. Should all current residents submit a valid claim, individual recovery is estimated to be approximately $100. Because not all current residents may submit claims, the Settlement Administrator has estimated that individual recovery will likely range between [$XXX-XXX], assuming between [XX-XX%] of current residents submit valid claims.

Former residents of Postal Zip Code 94124 will be paid *pro rata* from a total fund of $100,000, capped at a maximum payment of $100. The amount former residents receive may be less than $100 if more than 1000 former residents submit valid claims for payment.

This settlement is not intended to fully compensate Class Members for their damages related to the environmental fraud at the Shipyard. Plaintiffs retain their claims against Tetra Tech and may continue to pursue those claims for additional compensation.

### 9. What are the requirements to receive a Settlement Share?

You must currently own or rent a residential property in Postal Zip Code 94124, or you must have been a former owner or renter in Postal Zip Code 94124 between January 1, 2004 and [DATE]. Persons who have only resided in Postal Zip Code 94124 after [DATE] do not qualify to receive a settlement share.

**HOW YOU GET A PAYMENT**

## 10. How can I get a Settlement Share?

To qualify for a Settlement award, you must send in a Claim Form. A Claim Form is available by clicking HERE or at the website www.[____].com. You may also request that the Claim Form be mailed to you by the Settlement Administrator. The Claim Form may be submitted electronically or by postal mail. Read the instructions carefully, fill out the form, and postmark it by [Month] [Day], [Year] or submit it online on or before 11:59 p.m. (Pacific) on [Month] [Day], [Year].

## 11. When would I get my Settlement Share?

The Settlement Shares will not be distributed until the Court approves the Settlement. The Court will hold a Final Hearing on [DATE] at 10 a.m., to decide whether to approve the Settlement. The Final Hearing will either take place in Courtroom 11 on the 19th Floor of the San Francisco Federal Courthouse located at 450 Golden Gate Ave, San Francisco, CA 94102 or it will be held by video conference. If Judge Donato approves the settlement, there may be appeals. The appeal process can take time, perhaps more than a year. If there is no appeal, your Settlement will be processed promptly. Please be patient.

The date or location of the Final Hearing may change without further notice. You should check the Settlement website or the Court's Public Access to Court Electronic Records (PACER) site at https://ecf.cand.uscourts.gov to confirm that the date and location have not been changed.

## 12. What am I giving up to get a Settlement Share?

Unless you submit a valid request to be excluded from the Settlement Class, you will be a Settlement Class Member. If you remain a Settlement Class Member, you will be eligible for a Settlement Share, but you can't sue, continue to sue, or be part of any other lawsuit against the Developers about the claims and allegations in this case. It also means that all of the Court's orders will apply to you and legally bind you.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue, or continue to sue, the Developers on your own about the claims and allegations in this case, then you must take steps to get out of the Settlement Class. This is what it means to request to be excluded from or "opt out" of the Settlement Class.

## 13. How do I get out of the settlement?

To request to be excluded from the settlement, you must send a letter saying that you want to be excluded from the Settlement Class in *BayView Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.*, Case No. 3:19-cv-01417-JD. You must include your name, address, email and telephone number; explicitly state your desire to be excluded from the settlement class; and sign the request.

Your exclusion request must be postmarked by no later than [DATE], Pacific Time. You must send your exclusion request to:

[Settlement Administrator's NAME]
[Settlement Administrator's ADDRESS]

If you are excluded, you will not receive any Settlement Share, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) the Developers in the future about the claims and allegations in this case.

**14. If I don't out opt, can I sue the Developers for the same thing later?**

No. Unless you request to be excluded, you give up the right to sue the Developers for the claims that this settlement resolves. Any Class Member that does not request to be excluded will be bound by the class judgment.

**15. If I do opt out, can I get a Settlement Share?**

No. If you request to be excluded, you will not receive a Settlement Share. But you will not lose any right you may have to sue, continue to sue, or be part of a different lawsuit against the Developers about the claims and allegations in this case.

## THE LAWYERS REPRESENTING YOU

**16. Do I have a lawyer in this case?**

The Settlement Class is represented by Charles A. Bonner of The Law Offices of Bonner & Bonner who has been appointed by the Court as Lead Class Counsel for the Settlement Class. You do not need to pay anything to this lawyer. If you want to be represented by your own lawyer, you may hire one at your own expense.

**17. How will the lawyers be paid?**

Class Counsel, which have been prosecuting this litigation since its inception in 2018, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced all expenses necessarily incurred in order to prosecute the Action. Class Counsel will ask for attorneys' fees in an amount not to exceed $1,137,014.99, which is approximately **21**% of the Settlement Fund. Class Counsel will also apply for reimbursement of expenses paid on behalf of the Class. Class Counsel's fees and costs together will not exceed $1,400,000. A copy of Class Counsel's Motion for Attorneys' Fees and Expenses will be available at [WEBSITE] after the motion is filed with the Court.

## OBJECTING TO THE SETTLEMENT

You can also tell the Court that you don't agree with the settlement or some part of it.

**18. How do I tell the Court that I don't like the settlement?**

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the Settlement Agreement must be individually and personally signed by the Settlement Class Member submitting it (if the Settlement Class Member is represented by counsel, the objection must also be signed by such counsel), and must include:

    a.    The objecting Settlement Class Member's full name, address, and email and telephone number;

    b.    A written statement describing with particularity all grounds for the objection, accompanied by any factual or legal support for the objection;

    c.    Copies of any papers, briefs, or other documents upon which the objection is based;

    d.    The name, address, email address, and telephone number of any attorney(s) representing the objector; and

    e.    A statement indicating whether the objector and/or his or her counsel intends to appear at the Fairness Hearing and, if so, a list of all persons, if any, who will be called to testify in support of the objection.

All written objections and supporting papers must (a) clearly identify the case name and number (*BayView Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.,* Case No. 3:19-cv-01417-JD), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94012, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [DATE], Pacific Time.

If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

## 19. What's the difference between objecting and requesting exclusion?

If you object, you are telling the Court that you disagree with something in the settlement. You can object only if you *stay in* the Settlement Class. If you object but the Court still approves the settlement, you will be bound by the settlement and can receive the benefits it provides.

If you request exclusion, you are telling the Court that you don't want to be part of the Settlement Class. You would then have no basis to object because the settlement would no longer affect you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend, and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the settlement?

The Court is scheduled to hold a Final Hearing at 10 a.m. on [DATE], at the United States District Court for the Northern District of California, San Francisco Division, Courtroom 11 on the 19th Floor of the San Francisco Federal Courthouse located at 450 Golden Gate Ave, San Francisco, CA 94102. If the Court holds the hearing by video conference, instructions to join the conference will be found at [WEBSITE].

At the Final Hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Donato will listen to Settlement Class Members who have asked to speak at the hearing. The Court will also consider how much money to award Class Counsel in fees and expenses. After the Final Hearing, the Court will decide whether to approve the settlement and will rule on Class Counsel's Motion for Attorneys' Fees and Expenses.

We do not know how long these decisions will take. The date of the Final Hearing can change without further notice. Please check [WEBSITE] for further updates.

### 21. Do I need to come to the Final Hearing?

No. Class Counsel will answer questions about the settlement that Judge Donato may have. But you are welcome to come at your own expense. If you send an objection, you don't need to come to the Final Hearing to talk about it. As long as your written objection was received on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 22. May I speak at the Final Hearing?

You may ask the Court for permission to speak at the Final Hearing. To do so, you must send a notice stating that you intend to appear and speak at the Final Hearing *BayView Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.*, Case No. 3:19-cv-01417-JD. You must include the case name and number, your name, mailing address, email address, telephone number, and your signature. Your notice must be filed with the Clerk of the Court either by mailing it to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94012, or by filing it in person at any location of the United States District Court for the Northern District of California.

Your notice of intention to appear must be filed or postmarked on or before [DATE], Pacific Time. You cannot speak at the Final Hearing if you requested to be excluded from the Settlement Class.

## GETTING MORE INFORMATION

### 23. Are there more details about the settlement?

This Class Notice summarizes the proposed settlement. More details are in a Settlement Agreement. Copies of the Settlement Agreement and the pleadings and other documents relating to the case, including motions for approval of the Settlement and awards of Attorneys' Fees and Expenses, are on file at the United States District Court for the Northern District of California, San Francisco Division. The Settlement Agreement and other important documents are also available on the Settlement Website at [WEBSITE].

In addition, you can access the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.cand.uscourts.gov. You can also visit the office of the Clerk of the Court for the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, 16th Floor, San Francisco, California, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You should contact them by phone at 415-522-2000 to verify that the building is open on the day you intend to visit.

## 24. How do I get more information?

You can visit the Settlement Website at [WEBSITE], where you will find answers to common questions about the settlement and other information.

If the website does not have the answer to your question, you may contact Charles Bonner or A. Cabral Bonner of the Law Offices of Bonner & Bonner at 415-331-3070.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR ABOUT THE CLAIM PROCESS.**

# EXHIBIT C

Bayview Hunters Point Settlement
c/o Kroll Settlement Administration
PO Box XXXXX
City, State   XXXXX-XXXX

If you are a
current or former resident of Bayview Hunters
Point,
you could be entitled to benefits under a class
action settlement.

Questions?
Call
XXX.XXX.XXXX
Or Visit
www.SettlementWebsite.com

Claimant ID

Doe Claimant
1234 Main Street
Apt 1
San Francisco CA 94124

**A proposed Settlement has been reached in the class action lawsuit *Bayview Hunters Point Residents, et al. v. Tetra Tech EC, Inc.***

Case No. 3:19-cv-01417-JD, USDC ND CA.

## What Is This About?

The lawsuit claims that Tetra Tech, the company hired by the Navy to clean up Hunters Point Naval Shipyard, lied about the true levels of contamination and related health effects to residents of BayView Hunters Point. It also claims that Lennar Corporation and Five Point Holdings LLC ("Developers") should have stopped all development activity and should have given required notice under California's Proposition 65 to residents of BayView Hunters Point. The Developers deny any wrongdoing. The Court has not decided who is right. This settlement is only with the Developers. The lawsuit against Tetra Tech will continue.

## Who Is Included?

**Current and Former residents**: Any person who currently resides in Postal Zip Code 94124 **or** who previously resided there at any time between January 1, 2004 and _____, as well as all individuals named in Amended Exhibit A, ECF Doc. 154. All eligible Class Members will receive a payment upon submitting a valid claim.

## What Are The Benefits?

Under the proposed settlement, the Developers will pay $5,400,000 to settle these claims. Of that amount, up to $3,600,000 will be used to pay eligible Class Members and $400,000 will be used for a medical monitoring fund for eligible Class Members. Attorneys' fees and costs will be no more than $1,400,000. The cash payment per eligible Class Member differs depending on whether or not the Settlement Class Member is a current or former resident of Postal Zip Code 94124. Former residents who submit a valid claim will receive up to $100.

Current residents who submit a valid claim will be paid proportionally based on the number of claims filed. If all current residents submit a valid claim, individual recovery is estimated to be approximately $100. Because not all current residents may submit claims, the Settlement Administrator has estimated that individual recovery will likely range between [$XXX-XXX].

## Your Rights May Be Affected

If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by **Month Day, 2021** by completing the Opt-Out Form located at [settlement website] and submitting it online or to the Settlement Administrator by mail. If you do not timely exclude yourself, you will release any claims you have and will not be able to sue Developers or the Released Parties for any claim relating to the lawsuit. If you exclude yourself, which is sometimes called "opting out" of the Settlement Class, you won't receive a payment. If you stay in the Settlement Class, you may object to the Settlement in writing by **Month Day, 2021**.

## Final Fairness Hearing

The Court scheduled a Final Fairness Hearing on [Month, day, year] to consider whether to approve the Settlement; any objections; and the requests for awards to the Settlement Class Representative of $_____; and award of attorneys' fees and class representative costs of $_____. You may attend the Final Approval Hearing, but you do not have to. The Motion for Attorneys' fees and expense will be posted on the Settlement Website after they are filed with the Court.

# EXHIBIT D

## CLAIM FORM

***You Must Complete ALL sections and attach documentation proving that you lived in the 94124 postal zip code at any time between January 1, 2004 and <<the date of preliminary approval>> to Claim a Share of the Settlement Fund.***

If you received notice of the Settlement by mail and you are not filing online, make sure you include the Class Member ID from the front of your postcard notice below.

**Class Member ID number:** _____

**Check which circumstance applies:**

_____You are making this claim on your behalf.

_____You are making this claim on the behalf of a minor.

**Separate claim forms MUST be filled out for each individual in the household if they are filing a claim.**

_____Yes _____No  **Are you or the person you are making the claim on behalf of a named plaintiff in the lawsuit?**

_____Yes _____No  **Are you a current resident of the 94124 zip code?**

**You MUST provide ALL information requested in order for your claim to be processed. Any claims without required information might be rejected:**

1.   **Information for person filling out the claim form. Please use your current address:**

       Name:_____

       Address:_____

       City: _____ State: ___ ___ Zip Code:_____

       Telephone Number: ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

       Email Address:  _____@_____
       (Your email address will be the primary method for communication, so please provide a current monitored email.)

       Your Date of Birth:_____    Your Social Security Number _____-_____-_____

       **Address you resided at in the 94124 postal zip code if different from above address:**

       _____

       **List the years you lived in the 94124 zip-code**: _____

2.  **If filing out this claim for a minor, please  provide the following information in addition to the above. Please use the minor's current address:**

       Name: _____

       Address: _____

       City: _____ State:___ ___ Zip Code: _____

Minor's Date of Birth: _____   Minor's Social Security Number _____-_____-_____

**Address Minor resided at in the 94124 zip code if different from above address:**

_____

**List the years Minor lived in the 94124 zip-code**: _____

3.      **To be eligible to receive payment from this settlement, you MUST submit proof that you lived in the 94124 zip code** between January 1, 2004 and <<the date of preliminary approval>>.  To do so, please attach a copy of your driver's license, a bill, identification card, or any recognized documentation that lists both your name and your respective 94124 address.  If you are filing for a minor, and you are the primary claimant, you may provide information that shows you are their guardian, and then provide documentation that you resided in the 94124 zip code.

☐      By checking this box, you are attesting to the fact that you have attached documentation to prove your or a minor's residency in the 94124 postal zip code between January 1, 2004 and <<the date of preliminary approval>>.

4.      I attest under penalty of perjury under the laws of the United States that the above information is true and correct to the best of my knowledge.  I also understand that I must keep the administrator apprised with my current contact information so that I may receive payment and communications timely.

**Signature:** _____        **Date:** _____

**Name:** _____

**Relation to minor if applicable:** _____

Submit a Claim Form electronically at: www. settlement.com before midnight on _____

OR

You can mail this Claim Form postmarked prior to the deadline of _____to:

Settlement Name
c/o Settlement Administrator
PO Box XXXX
XXXXXXXXX, XX  XXXXX-XXXX

*3123500000000*
xxxxx00000000

**Bayview Hunters Point Residents, et al., v. Tetra Tech EC, INC., et al., Case 3:19-cv-01417-JD**

**Class Action Settlement Exclusion Form**

COMPLETE THIS FORM IF YOU WISH TO EXCLUDE YOURSELF FROM THE SETTLEMENT.

DEADLINE:  The exclusion form must be received on or before <<DATE>>. You may mail the form to:

Bayview Hunters Point Residents v. Tetra Tech EC, Inc. Settlement
c/o Kroll – Request for Exclusion
<<PO BOX>>
City, State, XXXXX

By completing this form, you are opting out and excluding yourself from this settlement.  You will retain your right to sue Tetra Tech EC, Inc. for the claims involved in this settlement, however you will not be able to file a claim, object, or receive money from this settlement.

<u>Instructions:</u> Fill out each section of this form and sign where indicated. You must fill out each section that is marked with an asterisk.

---

**Name \*:** _____     _____     _____
First Name\*                                         M.I.              Last Name \*

**Street Address \*:** _____

**City \*:** _____

**State \*:** ____ ____          **Zip Code \*:** ___ ___ ___ ___ ___

**Email Address:** _____ @ _____ .

**Phone Number:**  (__ ___ ___) ___ ___ ___ - ___ ___ ___ ___

---

By signing this Exclusion Form, I hereby opt out of this settlement and understand that I will have no right to receive any money under the settlement in this case, and I will have no right to object to the settlement and be heard at the Final Approval Hearing.

---

**SIGNATURE \*:** _____     **PRINTED NAME \*:** _____

**DATED \*:**      ___ ___ / ___ ___ / ___ ___ ___ ___

---

**\*31235\***                    **\*EXC\***                    **\*Page 1 of 1\***

# EXHIBIT E

1  CHARLES A. BONNER, ESQ.  SB# 85413
   A. CABRAL BONNER, ESQ. SB# 247528
2  **LAW OFFICES OF CHARLES A. BONNER**
   475 GATE FIVE RD, SUITE 211
3  SAUSALITO, CA 94965
   TEL: (415) 331-3070
4  FAX: (415) 331-2738
   cbonner799@aol.com
5  cabral@bonnerlaw.com

6  ATTORNEYS FOR PLAINTIFFS

7              **UNITED STATES DISTRICT COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

9                **SAN FRANCISCO DIVISION**

10  BAYVIEW HUNTERS POINT RESIDENTS,          **Case No.: 3:19-cv-01417-JD**
    DANIELLE CARPENTER, CHRISTOPHER
11  CARPENTER, DECEASED, BY DANIELLE
    CARPENTER, REPRESENTATIVE AND
12  SUCCESSOR IN INTEREST; CATHERINE          **DECLARATION OF JAMES**
    MUHAMMAD, *Including All Parties Listed*  **DAHLGREN, M.D. IN SUPPORT OF**
13  *In Exhibit A*; and Doe Plaintiffs 1-40,000, on  **MOTION FOR PRELIMINARY**
    behalf of themselves, and all others similarly  **APPROVAL OF *BAYVIEW HUNTERS***
14  situated,                                 ***POINT RESIDENTS* CLASS ACTION**
                                              **SETTLEMENT WITH HOMEBUILDER**
15          Plaintiffs,                       **DEFENDANTS**
16          vs.
17  TETRA TECH EC, INC.; TETRA TECH,
    INC; DAN L. BATRACK, *In his Individual*
18  *and Official Capacity*, CHAIRMAN, CHIEF  **DATE:  December 1, 2022**
    EXECUTIVE OFFICER and PRESIDENT of         **TIME:  10:00 am**
19  TETRA TECH; STEVEN M. BURDICK, *In*         **DEPT.:  11**
    *his Individual and Official Capacity,*     **JUDGE: HONORABLE J. DONATO**
20  EXECUTIVE VICE PRESIDENT,
    CHIEF FINANCIAL OFFICER OF TETRA
21  TECH; STEPHEN C. ROLFE, *In his*
    *Individual and Official Capacity,*
22  MANAGING AGENT OF TETRA TECH EC
    INC.; JUSTIN E. HUBBARD, *In his*
23  *Individual and Official Capacity,*
    MANAGING AGENT OF TETRA TECH EC
24  INC.; LENNAR CORPORATION; and FIVE
    POINT HOLDINGS, LLC., and DOES 1-100
25  Inclusive,
26          Defendants.
27
28

I, JAMES DAHLGREN, M.D. declare as follows:

1. I am a physician, licensed to practice medicine in California since 1969. I was Board Certified by the American Board of Internal Medicine in 1972, and re-certified in 1980. I have been treating and studying people with toxic chemical exposures since 1971.

2. My business address is 2975 Bowers Ave, Suite 215, Santa Clara, CA 95051.

3. I have personal knowledge of the matters set forth herein, except those stated on information and belief. If called as a witness I could competently testify thereto.

4. I have served as an expert medical witness throughout the United States and other countries around the globe, giving testimony and being deposed in cases of occupational and residential chemical exposures. I played an instrumental role as an expert witness in the hexavalent chromium case made famous in the movie *Erin Brockovich* and was the first to discover the link between the use of Dibromochloropropane (DBCP) in pesticides and decreased fertility among banana workers in Nicaragua. In the last 30 years, I have been deposed and testified in trial many times.

5. My current medical practice includes, working as a medical toxicology expert, evaluation of exposed population to environmental pollutants, data analysis and reporting, medical monitoring protocol, and medical record review. My staff and I also provide "On Site Medical Evaluations" both on a group and individual level. These tests can evaluate possible health damage from toxic exposures.

6. Below is a summary of my education and the positions I have held over the years:

| | |
|---|---|
| 1964 | B.A., University of California, Los Angeles |
| 1968 | M.D., University of California, San Francisco |
| 1968-1969 | Internship, Boston Veteran's Administration Hospital, Boston, Massachusetts |
| 1969-1970 | Resident I in Internal Medicine, Boston Veteran's Hospital, Boston, Massachusetts |
| 1970-1971 | Resident II in Internal Medicine, Cedars -Sinai Medical Center, Los Angeles, California |
| 1971-1973 | Fellow in Infectious Diseases, UCLA Medical Center, Department of Medicine |

DECLARATION OF JAMES DAHLGREN M.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF BAYVIEW HUNTERS POINT RESIDENTS CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS

1

| | | |
|---|---|---|
| 1973-1975 | Practice of Internal Medicine; Sub-specialty - Occupational Medicine |
| 1973-1974 | UCLA School of Public Health, Biostatistics and Epidemiology |
| 1975-1977 | Director of Ambulatory Care Services, Dept. of Medicine, Cedars-Sinai Medical Center |
| 1977-Present | Private Practice - Internal Medicine and Occupational and Environmental Medicine |
| | Toxicology |
| | Medical Surveillance |
| | Biomonitoring |
| | Disability Evaluation |
| | Risk Communication |
| 1986 | Founder, Pacific Toxicology Laboratories |
| 1995-2007 | Medical Director, Industrial Health, Inc., Palo Alto, California |
| 1997-2005 | Medical Director, MedRight, Santa Monica, California |

7.  Below is a summary of the memberships I have held over the years:

- Member, American College of Physicians 1972-1993
- Member, American College of Occupational and Environmental Medicine (ACOEM) 1975-Present
- Member, Western Occupational and Environmental Medicine Association (WOEMA)
- Founder, Member and Past President of California Society of Industrial Medicine and Surgery (CSIMS)
- Member, Medichem, An International Organization of Professionals for Occupational Health in the Chemical Industry
- Member, American Thoracic Society (ATS) 1978-1993
- Member, Society for Occupational and Environmental Health (SOEH)

8.  Below is a summary of the academic appointments I have held over the years:

- Teaching Fellow in Medicine, Tufts University 1968-1970
- Assistant Professor of Medicine, UCLA School of Medicine 1975-1977
- Assistant Clinical Professor of Medicine, University of California at Los Angeles, School of Medicine 1977-2011
- Teaching Office Elective in Occupational and Environmental Medicine 1978-1993
- Doctoring II, UCLA School of Medicine, 1994-1999
- Lecturer, Introduction to Occupational Medicine, EHS 251 Occupational Diseases, UCLA School of Public Health, Subjects:  Toxicity of Pesticides and Biomonitoring for Cadmium, 1992
- Qualified Medical Examiner and / or Independent Medical Examiner, Division of Workers Compensation, State of California 1977-1996
- Physicians Recognition Award, American Medical Association

DECLARATION OF JAMES DAHLGREN M.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF BAYVIEW HUNTERS POINT RESIDENTS CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS

2

9. Below is a summary of the committees I have been seated on over the years:
- Adult Respiratory Disease Committee, Los Angeles Lung Association, 1975-1979
- Environmental Carcinogenesis Committee UCLA, School of Public Health 1978
- Chairman, Industrial Lung Cancer Committee, Community Cancer Control, American Cancer Society, Los Angeles Chapter, 1978-1979
- Member, Board of Directors, California Society of Industrial Medicine and Surgery (CSIMS) 1979-2011
- Member, Legislative Committee, CSIMS
- Member, Division of Occupational and Environmental Medicine Advisory Committee, UCLA Department of Medicine, 1985-Present
- Member, Medical Surveillance and Biomonitoring, Co-Chair of Heavy Metals Subcommittee, American College of Occupational and Environmental Medicine, 1994-Present
- Member, Residency Advisory Committee Occupational & Environmental Medicine Residency, UCLA School of Medicine, Department of Family and Community Medicine 2001-2002

10. Attached as Exhibit 1 is a list of my publications.

11.  I have detailed knowledge and experience regarding research into the health effects of Superfund sites including the references attached as Exhibit 2.

12. I am also familiar with the Hunters Pont Naval Shipyard (HPNS) Superfund site. The US Navy has evaluated the site, which is contaminated with plutonium, radium, uranium, cesium, manganese, and dozens of other radioactive and heavy metals. The SF Department of Health found an excess of cancer in the neighbors of the shipyard. There is a large increase in asthma, especially in children.

13. Given my expertise in this area and my familiarity with the HPNS, the Law Offices of Bonner and Bonner asked me to design and implement a multi-phase medical monitoring protocol for the Bay View Hunters Point community.  On at least three previous occasions, I have been retained by Charles Bonner on several mass toxic cases: *Lindsey R. Cooper v. Tokyo Electric Power Company, Inc. Aka Tepco*, Case No.: 12-CV-3032-JLS-WMc, (2014), involving approximately five hundred U.S sailors and first responders exposed to radiation while performing humanitarian aid and rescue during the Fukushima Nuclear Power Plant meltdown; *James Quinn, et al. v Shell Oil Inc. et al.*, Case No. CV 043471,

(2004) Marin County Superior Court; and *Defranchesco, et al. v. Shell Oil Inc.*, *et al.* (2004), Marin County Superior Court.  The latter two cases involved evaluating residents of a mobile home in Novato, California who had been exposed to aromatic hydrocarbons, including MTEB and benzene.  The residents' water system had been contaminated with gasoline from a leaking underground gas station tank.

14. I have not received any payment from the Law Offices of Bonner & Bonner for my services in this case. I will bill for expert work at the rate of $650/ hour, but I will not be billing time for the medical monitoring work described in this declaration.

15.  The plan outlined below is phase one, to be implemented with the $400,000 medical monitoring fund created by the settlement between the Hunters Point Community and the Homebuilders. Based on my experience and as further explained below, the $400,000 fund will be sufficient to assess roughly 1,100 class members with a health questionnaire and a basic urine test for radioactive and other toxic metals.

16. I estimate that the total cost per person will be about $350, which will allow at least 1,100 people to get tested. The $350 cost includes roughly $200 to test for radioactive elements like plutonium, with another $100 for analyzing the data. There will also be a health questionnaire, which will cost roughly $50. These numbers may change depending on inflation. The testing numbers set forth above are estimates based on similar tests I have recently requested from independent laboratories.

17. Given the size of the proposed medical monitoring fund, I recommend that the funds be used to provide the medical monitoring described in Paragraph 17 for a sample of class members who have lived in the exposure zone of one mile from HPNS for at least five years. Based on my experience, a sample of roughly 1,100 is of sufficient size to reach statistical significance in the results for a community of the size of HPNS.  The sample will include at least one-third who were exposed as children and one-third who were exposed from age 18 to 40.  A focus on the younger members is important because they would have the greatest susceptibility to harm from the contaminants. The ethnic or racial mix in the study population will be kept as close as possible to the current census

DECLARATION OF JAMES DAHLGREN M.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF BAYVIEW HUNTERS POINT RESIDENTS CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS

4

estimated data, as will the gender breakdown. This procedure will help gather data to help assess the community-wide impact of pollution at HPNS and to determine how to best use future funds for treatment and medical monitoring. In addition, the testing sample could uncover disease clusters that could inform family members and neighbors of potential injuries caused by harmful exposure at HPNS. These individuals would then have the information they could use to seek medical treatment for themselves and their family.

18. My team will randomly select roughly 1,100 individuals who have submitted valid claims and are members of the settlement class and invite the class members to receive a basic screening consisting of a brief questionnaire and a basic urine screen for radioactive and other toxic metals emanating from the HPNS. If the class member declines to participate, my team will randomly select a replacement. While random, my team will ensure that the subjects are representative of the community in terms of age, gender, location, and duration of residence.

19. My office agrees to provide the support services above for each class member. This plan should allow for screened individuals to benefit from the information obtained. My office will provide timely updates, invoices, and accounting to plaintiffs' counsel. It is also my understanding that counsel will make available to the public information on the number of people tested and the use of the medical monitoring funds.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on this 17th day of October, 2022 in Santa Clara, California.

_James Dahlgren_

James Dahlgren

**DECLARATION OF JAMES DAHLGREN M.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF BAYVIEW HUNTERS POINT RESIDENTS CLASS ACTION SETTLEMENT WITH HOMEBUILDER DEFENDANTS**

5