MAYER BROWN LLP
DAVINA PUJARI, SBN 183407
CHRISTOPHER A. RHEINHEIMER, SBN 253890
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone: (415) 874-4230
Facsimile: (650) 331-2060
dpujari@mayerbrown.com
crheinheimer@mayerbrown.com

Attorneys for Defendants TETRA TECH EC, INC. and TETRA TECH, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| BAYVIEW HUNTERS POINT RESIDENTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TETRA TECH EC, INC., et al., <br><br> Defendants. | Case No.   3:19-cv-01417-JD <br><br> Assigned to Hon. James Donato <br> Courtroom 11 <br><br> **DEFENDANTS TETRA TECH EC, INC. AND TETRA TECH, INC.'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION** <br><br> Date: January 29, 2026 <br> Time: 10:00 a.m. <br> Courtroom: 11 <br> Judge: Hon. James A. Donato |
|---|---|

| | |
|---|---|
| 1 | **NOTICE OF MOTION** |

2    Please take notice that on January 29, 2026 at 10:00 a.m., or as soon thereafter as this
3 matter may be heard by the Honorable Judge James A. Donato, United States District Court Judge
4 of the United States District Court for the Northern District of California, located at 450 Golden
5 Gate Avenue, Courtroom 11, 19th Floor, San Francisco, California, Defendants Tetra Tech EC,
6 Inc. ("TtEC") and Tetra Tech, Inc. ("TTI") (collectively, the "Tetra Tech Defendants") will and
7 hereby do move the Court pursuant to California Code of Civil Procedure §§ 877 and 877.6 for a
8 determination of good-faith settlement.
9    This Motion is made upon the Notice of Motion, the accompanying Memorandum of
10 Points and Authorities, any reply memorandum, and such other written and oral argument as the
11 Court may entertain on this Motion.

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................................ 1
II.    BACKGROUND .............................................................................................................. 1
       A.   Hunters Point Naval Shipyard, TtEC, Lennar, And Five Point. ........................... 1
       B.   Procedural History. ................................................................................................ 4
III.   LEGAL STANDARD ...................................................................................................... 4
IV.    ARGUMENT ................................................................................................................... 5
       A.   Tetra Tech's Settlement Is Not Collusive, Fraudulent, Or Aimed At Injuring
            The Interests Of Non-Settling Parties. .................................................................. 5
       B.   The Settlement Amount Is Within The Reasonable Range Of the Tetra Tech
            Defendants' Proportionate Liability. ..................................................................... 6
       C.   A Settling Defendant Should Pay Less In Settlement Than It Would Pay If
            It Were Held Liable After Trial. ............................................................................ 8
V.     CONCLUSION ................................................................................................................ 8

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Ford, Inc. v. Superior Court*,
 43 Cal. 3d 858 (1987) .................................................................................................................. 6

*Bay Dev., Ltd. v. Superior Court*,
 50 Cal. 3d 1012 (1990) ................................................................................................................ 8

*Cahill v. S. D. Gas & Elec. Co.*,
 194 Cal. App. 4th 939 (2011) ...................................................................................................... 8

*City of W. Sacramento, Cal. v. R & L. Bus. Mgmt.*,
 2020 WL 4350208 (E.D. Cal. July 29, 2020) .............................................................................. 8

*Dumontier v. Schlumberger Tech. Corp.*,
 543 F.3d 567 (9th Cir. 2008) ....................................................................................................... 7

*Farrar v. Workhorse Grp., Inc.*,
 2023 WL 5505981 (C.D. Cal. July 24, 2023) .............................................................................. 5

*GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc.*,
 2000 WL 36741015 (N.D. Cal. Aug. 4, 2000) ............................................................................. 6

*Golden v. CH2M Hill Hanford Grp., Inc.*,
 528 F.3d 681 (9th Cir. 2008) ....................................................................................................... 7

*In re Hanford Nuclear Rsrv. Litig.*,
 534 F.3d 986 (9th Cir. 2008) ....................................................................................................... 7

*Horton v. Superior Court (Western Farm Serv., Inc.)*,
 194 Cal. App. 3d 727 (1987) ....................................................................................................... 6

*Hunter v. Boeing N. Am., Inc.*,
 2014 WL 12586441 (C.D. Cal. May 15, 2014) ........................................................................... 7

*United States of America, ex rel. Jahr v. Tetra Tech EC, Inc.*,
 3:13-cv-03835-JD (N.D. Cal. Dec. 5, 2025), Dkt. No. 520 ......................................................... 2

*Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*,
 24 Cal. App. 4th 1036 (1994) ...................................................................................................... 7

*Lassair v. New Orleans City*,
 2020 WL 777291 (E.D. La. Feb. 18, 2020) ................................................................................. 7

*Lusk v. Five Guys Enters. LLC*,
 2022 WL 4791923 (E.D. Cal. Sept, 30, 2022) ............................................................................. 5

*Miller v. Christopher*,
 887 F.2d 902 (9th Cir. 1989) ....................................................................................................... 8

*Pennington v. Tetra Tech EC, Inc.*,
    2022 WL 899843 (N.D. Cal. Mar. 28, 2022) ........................................................................ 4, 5

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ................................................................................................................ 7

*Rose v. Union Oil Co. of Cal.*,
    1999 WL 51819 (N.D. Cal. Feb. 1, 1999) ................................................................................. 7

*Tech-Bilt, Inc. v. Woodward Clyde & Assocs.*,
    38 Cal. 3d 488 (1985) ..................................................................................................... 5, 6, 8

*Villagas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .......................................................................... 5

*Wilshire Ins. Co. v. Tuff Boy Holding, Inc.*,
    86 Cal. App. 4th 627 (2001) ..................................................................................................... 8

*Wysong & Miles Co. v. W. Indus. Movers*,
    143 Cal. App. 3d 278 (1983) ..................................................................................................... 8

**Statutes**

Cal. Civ. Code § 877 ............................................................................................................... 1, 4

Cal. Civ. Code § 877.6 ............................................................................................................ 1, 4

**Other Authorities**

BAY AREA AIR QUALITY MANAGEMENT DISTRICT, *Lennar Bayview Hunters Point
    Fact Sheet* (Dec. 6, 2010) .......................................................................................................... 3

NAVFAC, Fact Sheet, Hunters Point Naval Shipyard, Parcel B Radiological Object
    Recovery (December 2023) ....................................................................................................... 2

NAVFAC, Fact Sheet, Hunters Point Naval Shipyard, Parcel C Radiological Deck
    Marker Recovery (September 2023) ......................................................................................... 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Following extensive settlement discussions, Plaintiffs and the Tetra Tech Defendants accepted a mediator's proposal from Chief Magistrate Judge Donna M. Ryu to settle Plaintiffs' claims against the Tetra Tech Defendants for $1.5 million. Min. Orders, Dkt. Nos. 351, 361, 362, 364.[1] Plaintiffs separately resolved their claims against Lennar Corporation ("Lennar") and Five Point Holdings, LLC ("Five Point")—also with Judge Ryu's assistance. Min. Order, Dkt. No. 351.

The Tetra Tech Defendants' settlement was made in good faith pursuant to California Code of Civil Procedure §§ 877 and 877.6, which precludes Lennar and Five Point from seeking contribution or indemnity to recover what they separately agreed to pay Plaintiffs. The Tetra Tech Defendants' settlement was the result of arm's-length negotiations and was not collusive. The settlement resulted from a mediator's proposal by Judge Ryu after considering *all* parties' claims and defenses. Judge Ryu's proposal considered the strength of Plaintiffs' claims against the Tetra Tech Defendants—which were exceedingly weak—and the Tetra Tech Defendants' relative alleged fault compared to Lennar and Five Point. Judge Ryu's proposal, which the parties accepted, was a good faith settlement.

## II. BACKGROUND

### A. Hunters Point Naval Shipyard, TtEC, Lennar, And Five Point.

Plaintiffs are approximately 6,500 individuals who claim to have lived and worked in the Bayview Hunters Point neighborhood ("Bayview") in San Francisco, California. *See, e.g.,* Sixth Am. Compl. ("6AC") ¶ 1. Hunters Point Naval Shipyard ("HPNS") is a 900-acre former naval base in southeast San Francisco where Navy activities caused chemical and low-level radiological contamination from the 1940s until the 1970s. *Id.* ¶¶ 2-4.

---

[1] Plaintiffs and the Tetra Tech Defendants are currently negotiating and finalizing a written settlement agreement, which the Tetra Tech Defendants will provide to the Court after it is executed by the parties. The Tetra Tech Defendants are filing their motion for a good faith settlement determination now in accordance with the Court's order that such motions be filed by December 8, 2025. Orders, Dkt. Nos. 366, 368.

TtEC was contracted by the Navy to perform certain, specified radiological cleanup and remediation work between 2004 and 2016 on some of the parcels at HPNS, 6AC ¶¶ 15-16, 39. In 2016, the Nuclear Regulatory Commission ("NRC") found that two **non-managerial** TtEC workers had acted outside established protocols and collected soil samples from different locations than shown on chain of custody forms. *See* Rheinheimer Decl., Ex. A Dep. Ex. 3415 (Letter from Daniel Dorman to Andrew Bolt Re Tetra Tech EC, Inc Notice of Violation of Proposed Imposition of Civil Penalty (Feb. 11, 2016)). The NRC found **no evidence** that TtEC's management was involved in or aware of this conduct. *Id.* Two rogue workers later pleaded guilty to criminal charges related to these incorrect forms which impacted only a limited number of samples collected from "four survey units", compared to tens of thousands of samples collected from more than 1,000 survey units. *See* Rolfe Plea Agreement, Dkt. No. 114-05; Hubbard Plea Agreement, Dkt. No. 114-04; Rheinheimer Decl., Ex. B Dep. Ex. 312 (NAVFAC, Navy Factsheet, Radiological Data Review (2017)). In a recent filing in a related False Claims Act case, the United States confirmed the narrow scope of misconduct admitted by Rolfe and Hubbard, the "dispute[d]" and "conflicting" allegations made by whistleblowers (who stand to obtain millions of dollars, despite admitting their own misconduct which was not known by TtEC or TTI when committed), and the limited areas of HPNS implicated by the government's case. *See* United States' Suppl. Br. Regarding FCA Settlement Approval and Relators' Shares, *United States of America, ex rel. Jahr v. Tetra Tech EC, Inc.*, 3:13-cv-03835-JD (N.D. Cal. Dec. 5, 2025), Dkt. No. 520)). At long last, after years of litigation, the government has clearly disavowed that TtEC's work was "worthless" or that misconduct by workers permeated the entire project.

Indeed, an independent contractor hired by the Navy has been comprehensively retesting areas of HPNS where TtEC worked and ***has not identified a single exceedance of cleanup goals in soil in locations remediated by TtEC, or indeed any radiation levels whatsoever that pose a potential risk to human health***.[2] TtEC's work and the HPNS site have now been scrutinized by

---

[2] NAVFAC, Fact Sheet, Hunters Point Naval Shipyard, Parcel B Radiological Object Recovery (December 2023), https://media.defense.gov/2023/Dec/26/2003365621/-1/-

local, state, and federal regulators, public health officials, academics, and teams of experts for over a decade. TtEC is not aware of a single finding of radiation levels that pose a human health risk. To the contrary, HPNS has been repeatedly deemed safe by the Navy, U.S. EPA, and the California Department of Public Health. And there is no evidence whatsoever that any conduct by TtEC caused radiation to leave HPNS and travel to Bayview (which is both uphill and upwind from HPNS), let alone to expose any individual Plaintiff or their properties to radiation. Rheinheimer Decl., Ex. C Katherine Higley, Dep. Tr. 156:24-157:3 ("I have not seen any data that suggests to me that the radiation levels and the residual radionuclides at Hunters Point pose an unacceptable risk of cancer to the surrounding community."); *see also id.* at 170:18-23 ("From a radiological standpoint [] I don't see exposure pathways of concern" between HPNS and the Bayview); Dep. Ex. 4310 (NAVFAC, FAQs, HPNS Radiological Data Evaluation, Community Outreach (2022) (confirming that even within HPNS, radiation exposures "are less than, or similar to, the amount of radiation received by the average person on an average day")).

Lennar and Five Point are developers which have been building (or are planning to build) on parcels that were or are part of HPNS. 6AC ¶¶ 20-22, 116-117. Plaintiffs allege that Lennar and Five Point failed to monitor and control dust and asbestos as part of their activities at HPNS. *Id.* ¶¶ 107-110, 116-123. Unlike the Tetra Tech Defendants, which did not perform any work adjacent to the Bayview neighborhood, Lennar performed soil disturbance work near the Bayview with documented asbestos exceedances. For example, in 2006 and 2007, the Bay Area Air Quality Management District issued notices of violations ("NOVs") to Lennar for alleged violations of its Asbestos Dust Mitigation Plan. The NOVs alleged Lennar failed to properly conduct air monitoring, overfilled trucks with material, and failed to maintain wheel wash beds free of accumulated material.[3] Lennar settled the NOVs for a civil penalty of $515,000. *Id.*

---

1/0/HPNS_DEC2023_PARCEL_B_RAD_GLASS_FACT_SHEET.PDF; NAVFAC, Fact Sheet, Hunters Point Naval Shipyard, Parcel C Radiological Deck Marker Recovery (September 2023), https://media.defense.gov/2023/Sep/12/2003298671/-1/-1/0/PARCEL_C_DECK_MARKER_FACTSHEET__AUG2023.PDF.

[3] BAY AREA AIR QUALITY MANAGEMENT DISTRICT, *Lennar Bayview Hunters Point Fact Sheet*, at 2 (Dec. 6, 2010), https://www.baaqmd.gov/~/media/files/compliance-and-enforcement/fact-sheets/lennar-fact-sheet.pdf.

### B. Procedural History.

Though originally filed as a class action, Plaintiffs' 6AC restyled the case as a "mass action" brought on behalf of approximately 9,500 individual plaintiffs who allegedly lived or worked in the Bayview. 6AC ¶ 14. Approximately 3,000 of those plaintiffs were subsequently dismissed with prejudice for failing to submit basic fact sheet questionnaires, Order, Dkt. No. 249—leaving 6,500 Plaintiffs remaining in this action. Pls.' Mot. 2, Dkt. No. 369.

Plaintiffs have disclaimed any physical injuries or property damages related to the Tetra Tech Defendants' activities at HPNS. Rheinheimer Decl., Ex. D, Law Offices of Bonner & Bonner, Townhall Recap (May 21, 2025) ("[W]e cannot connect any individual's illness to Tetra Tech's conduct."); Rheinheimer Decl., Ex. E, Sample Fact Sheet (disclaiming "damages for injury to Property, or to interests in Property, including diminution of value").

Plaintiffs' only purported injury is emotional distress related to alleged fear of cancer from living and working near HPNS. To support their emotional distress claims, Plaintiffs submitted expert reports from Dr. Dahlgren and Dr. Spiegel. On September 4, 2025, Defendants moved to exclude the testimony of Dr. Dahlgren and Dr. Spiegel under *Daubert*, and moved for summary judgment on all of Plaintiffs' claims. Defs.' Mot. Summ. J., Dkt. Nos. 344-348.

With the dispositive motions pending, on September 15, 2025, the parties participated in a settlement conference with Judge Ryu. At the conference, Plaintiffs reached an agreement to resolve their claims against Lennar and Five Point. Min. Order, Dkt. No. 351. On September 26 and October 1, 2025, Plaintiffs and the Tetra Tech Defendants engaged in additional settlement discussions with Judge Ryu (Min. Orders, Dkt. Nos. 361, 362), culminating in a mediator's proposal to resolve Plaintiffs' claims against the Tetra Tech Defendants for $1.5 million. On October 3, 2025, the parties accepted Judge Ryu's proposal. Min. Order, Dkt. No. 364.

### III. LEGAL STANDARD

Under California law, a settling defendant may seek a determination that the settlement was made in good faith to bar other tortfeasors from seeking contribution or indemnification. Cal. Civ. Proc. Code §§ 877, 877.6. "[T]he dual goals under the statutes are the 'equitable sharing of costs among the parties at fault' and the 'encouragement of settlements.'" *Pennington v. Tetra*

*Tech EC, Inc.*, 2022 WL 899843, at *1-3 (N.D. Cal. Mar. 28, 2022) (quoting *Tech-Bilt, Inc. v. Woodward Clyde & Assocs.*, 38 Cal. 3d 488, 494 (1985)). In *Tech-Bilt*, the California Supreme Court identified several factors courts are to consider in determining whether a settlement is made in good faith, including: (1) whether the settlement is the result of "collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants"; (2) the amount paid in settlement; (3) "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability"; and (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." 38 Cal. 3d at 499. Any party "asserting [a] lack of good faith" has the burden of proof and must prove "that the settlement is so far 'out of the ballpark' in relation to the [*Tech-Bilt*] factors as to be inconsistent with the equitable objectives of the statute." *Id.* at 499-500.

## IV.   ARGUMENT

### A.   Tetra Tech's Settlement Is Not Collusive, Fraudulent, Or Aimed At Injuring The Interests Of Non-Settling Parties.

As an initial matter, the fact that the Tetra Tech Defendants' settlement resulted from a mediator's proposal by Judge Ryu is itself compelling evidence that the settlement is not collusive, fraudulent, or aimed at injuring the interests of non-settling parties. Courts routinely find that settlements resulting from mediators' proposals were made in good faith. *See, e.g.*, *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *5 (C.D. Cal. July 24, 2023) (finding that settlement resulted from arms-length negotiations, including because "the Settlement is the result of a mediator's proposal, which reflected his assessment of … 'an amount that would be fair, reasonable, and in the best interests of [the parties]'"); *Lusk v. Five Guys Enters. LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept, 30, 2022) ("The fact that the parties engaged in mediation and that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.") (citing *Villagas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Pennington*, 2022 WL 899843, at *3 (granting good faith determination where "the settlement before the Court was reached as a result of a 'mediator's proposal' made by experienced, neutral mediators").

That is especially true here—where the settlement conference facilitator was Judge Ryu, this Court's Chief Magistrate Judge, who has been involved in settlement discussions amongst the parties to this and related HPNS cases since July 2020. Order, Dkt. No. 63. Judge Ryu's experience and neutrality are not in dispute. Judge Ryu made her mediator's proposal after Plaintiffs and the Tetra Tech Defendants had exchanged detailed mediation statements laying out the parties' claims and defenses and engaged in ongoing discussions over several days. Judge Ryu also made her mediator's proposal after assisting in Plaintiffs' settlement with Lennar and Five Point. Judge Ryu was therefore readily familiar with *all* parties' claims and defenses, and each Defendant's potential exposure to Plaintiffs, when she made her mediator's proposal. The Tetra Tech Defendants were also the last defendant to settle, so there are no non-settling parties.

### B. The Settlement Amount Is Within The Reasonable Range Of the Tetra Tech Defendants' Proportionate Liability.

To decide whether a settlement is within a reasonable range of a defendant's proportionate liability, courts "determine a 'rough approximation' of what the plaintiff would actually recover if the case should go to trial" and consider whether the defendant has "substantial defenses to liability." *GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc.*, 2000 WL 36741015, at *3 (N.D. Cal. Aug. 4, 2000) (quoting *Horton v. Superior Court (Western Farm Serv., Inc.)*, 194 Cal. App. 3d 727, 735 (1987)). A lack of good faith cannot be "established by a showing that a settling defendant paid less than his theoretical proportionate or fair share," which would "unduly discourage settlements." *Tech-Bilt*, 38 Cal. 3d at 499; *see also Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 874 (1987) ("[A] 'good faith' settlement does not call for perfect or even near perfect apportionment of liability. In order to encourage settlement, it is quite proper for a settling defendant to pay less than his proportionate share of the anticipated damages.").

Here, Plaintiffs had abandoned any personal injury or property damage claims related to the Tetra Tech Defendants' work at the HPNS—substantially limiting what they could have recovered at trial, even setting aside the foundational factual and legal problems with their claims. Plaintiffs instead sought only emotional distress damages related to the Tetra Tech Defendants' work at HPNS. The Tetra Tech Defendants had substantial defenses to liability for Plaintiffs'

emotional distress claims. Indeed, at the time of the settlement, Plaintiffs' claims were subject to pending summary judgment and *Daubert* motions that would have defeated all of Plaintiffs' claims before trial. Defs.' Joint Mot. Summ. J., Dkt. Nos. 344-347.

Among other things, the Tetra Tech Defendants argued, first, that Plaintiffs' claims were preempted by the Price-Anderson Act ("PAA") because the claims assert a public liability action arising from a nuclear incident under the statute. *See In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008); *accord Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 683 (9th Cir. 2008). Indeed, courts have consistently found that the PAA preempts the kinds of claims at issue here. *See, e.g.*, *Hunter v. Boeing N. Am., Inc.*, 2014 WL 12586441, at *4 (C.D. Cal. May 15, 2014); *Lassair v. New Orleans City*, 2020 WL 777291, at *1 (E.D. La. Feb. 18, 2020). The PAA creates a substitute federal cause of action to replace preempted state law claims, *Dumontier v. Schlumberger Tech. Corp.*, 543 F.3d 567, 569 (9th Cir. 2008), but Plaintiffs cannot satisfy the elements of that federal claim because they have no evidence they suffered any physical personal or property damage or were exposed to radiation above the applicable regulatory levels (or, indeed, any radiation from HPNS at all).

Second, Plaintiffs' nuisance claims also fail because they have disclaimed any physical injury to their persons or property and fear of future injury is not a nuisance as a matter of law. *Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*, 24 Cal. App. 4th 1036, 1041 (1994). Relatedly, the nuisance claims cannot succeed because Plaintiffs provided *zero* evidence of any radiological contamination of their properties, let alone at levels that pose a risk to health. *See Rose v. Union Oil Co. of Cal.*, 1999 WL 51819, at *6 (N.D. Cal. Feb. 1, 1999).

Third, Plaintiffs failed to allege any damages that are cognizable in a negligence action because they offer no evidence that any Plaintiff was exposed to radiological contamination from HPNS, let alone that any such exposure was caused by the Tetra Tech Defendants' work. Plaintiffs also have submitted no reliable medical or scientific opinion that any Plaintiff's risk of cancer has been increased as a result of any exposure caused by the Tetra Tech Defendants, let alone that they are more likely than not to develop cancer as a result of any increased exposure. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 997, 1000 (1993).

-7-   19-CV-01417-JD
TETRA TECH'S MEM. ISO GOOD FAITH SETTLEMENT DETERMINATION

Given these significant hurdles, the Tetra Tech Defendants' agreement to pay Plaintiffs $1.5 million is well within a reasonable range of its potential liability. California courts routinely approve good-faith settlements involving only a small fraction of a plaintiff's total potential recovery, particularly where recovery is highly uncertain. *See, e.g.*, *Cahill v. S. D. Gas & Elec. Co.*, 194 Cal. App. 4th 939, 966-68 (2011) (noting numerous "cases in which relatively insubstantial settlement amounts were upheld as made in good faith"); *see Bay Dev., Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1018-19 (1990) ($30,000 settlement for $1 million claimed damages); *Wysong & Miles Co. v. W. Indus. Movers*, 143 Cal. App. 3d 278, 283 (1983) ($65,000 settlement for $7 million claimed damages); *Wilshire Ins. Co. v. Tuff Boy Holding, Inc.*, 86 Cal. App. 4th 627, 631-32 (2001) ($50,000 settlement for $1.425 million claimed damages).

### C. A Settling Defendant Should Pay Less In Settlement Than It Would Pay If It Were Held Liable After Trial.

Even if Plaintiffs could have overcome the significant hurdles to proving their claims against the Tetra Tech Defendants, courts recognize that "a settlor should pay less in settlement than he would if he were found liable after a trial." *Tech-Bilt*, 38 Cal. 3d at 499. Settlements are also "'often discounted to reflect the cost of trial to the plaintiff and the uncertainties of the trial's outcome.'" *City of W. Sacramento, Cal. v. R & L Bus. Mgmt.*, 2020 WL 4350208, at *3 (E.D. Cal. July 29, 2020) (quoting *Miller v. Christopher*, 887 F.2d 902, 907 (9th Cir. 1989)).

Plaintiffs' $1.5 million settlement with the Tetra Tech Defendants avoids the significant costs and uncertainties of trial. And in contrast to the Developers, which had performed work that released asbestos near the Bayview, Plaintiffs faced significant cost and uncertainty to recovering for emotional distress related to the Tetra Tech Defendants' work, for which there is no evidence of any exposure of any kind whatsoever to the Bayview community.

### V. CONCLUSION

For the foregoing reasons, the Court should make a determination that the Tetra Tech Defendants' settlement with Plaintiffs was made in good faith under California Code of Civil Procedure §§ 877 and 877.6.

DATED: December 8, 2025

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Davina Pujari*
Davina Pujari
Christopher A. Rheinheimer

Attorneys for Defendants TETRA TECH EC, INC. and TETRA TECH, INC.